The STATE of Texas, Appellant,

v.

Enrique Alfonso GARIBAY, Appellee.

No. 08–91–00016–CR.

Court of Appeals of Texas,
El Paso.

July 15, 1992.

Rehearing Overruled Oct. 2, 1992.

Steve W. Simmons, Dist. Atty. of El Paso County, El Paso, for State/appellant.

Thomas S. Hughes, El Paso, for appellee.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

BARAJAS, Justice.

This is an appeal from an order of the trial court granting a motion to suppress a confession. In its sole point of error, the State of Texas asserts that the trial court erred in granting Appellee's motion to suppress his confession on the basis of an alleged violation of his Fifth and Sixth Amendment right to counsel. We reverse and remand.

## I. SUMMARY OF EVIDENCE

Appellee, Enrique Alfonso Garibay, was indicted for the offense of murder, alleged to have occurred on June 26, 1989.

The record reveals that the victim, an acquaintance of Appellee, was found dead floating in the Rio Grande on June 26, 1989. That same day, detectives with the El Paso Police Department spoke to Appellee, among other known friends of the victim, in an effort to establish the victim's identity. At the time Appellee initially spoke to law enforcement officers, i.e., June 26, 1989, he was not a suspect in the death of the victim. Appellee gave detectives a voluntary written statement, as well as voluntarily giving requested hair samples. On the following day, Appellee gave police officers an additional statement.

The record reveals that on June 30, 1989, Detective Antonio Leyva of the El Paso Police Department received a call from an attorney purporting to represent Appellee in the investigation. At the time of the telephone call, Appellee was not a suspect in the investigation, nor were any charges pending against him regarding the instant offense. The attorney specifically advised Detective Leyva that he was not to obtain any more statements from Appellee, nor was Appellee going to submit to any sort of testing.

On November 30, 1989, an arrest warrant was obtained and executed for Appellee. The record establishes that Appellee was read his Miranda warnings at his residence at the time of his arrest. At the time of his arrest, Appellee requested that his landlady "[c]all [his] father and tell him what happened so that he can pick up my stuff." Testimony established that at the time of his arrest, Appellee never asked to call his attorney.

Subsequent to his arrest, Appellee was transported to the El Paso Police Department for questioning. It is conceded that the questioning was initiated by the police, rather than Appellee. The record reflects that Appellee, upon arriving at police headquarters, was once again warned of his pertinent constitutional rights. A card specifically detailing those rights that were read to Appellee that bear his signature and date, was introduced in evidence. Detective Leyva testified that Appellee stated he understood his rights and wished to

waive those rights and speak to him. Specifically, Appellee waived his right to consult with an attorney and further, during the course of the interview with Detective Leyva, never requested to speak to an attorney.

An oral confession was taken and preserved via electronic means. The audio tape of Appellee's confession reveals that his pertinent constitutional rights were once again read to Appellee, after which he confessed to having choked the victim to death with his hands.

The trial court entered findings of facts and conclusions of law wherein it factually found, among other matters, that on or about June 29, 1989, an attorney contacted Detective Leyva and advised him that she was representing Appellee. The trial court further found that Appellee acknowledged his warnings by signing and dating a card that reflected those rights. Additionally, the trial court found that Appellee indicated that he understood his rights, specifically his right to an attorney, but nonetheless wished to waive those rights and speak with Detective Leyva. The trial court found that communication was initiated by law enforcement officers and no attempt was made on the part of the police detectives to contact Appellee's attorney, or any other attorney. The trial court further found that Appellee was not coerced, threatened or promised anything in exchange for his oral or written statement. Finally, the trial court found that notwithstanding his conclusions of law, Appellee, at all times, indicated that he voluntarily did not wish to have an attorney present when he spoke with the detectives.

In its conclusions of law, the trial court, citing *Arizona v. Roberson,* found that Appellee's statement was taken in violation of his Fifth Amendment right to counsel in that on June 29, 1989, and prior to any police initiated communications or interrogation, Appellee's attorney contacted Detective Leyva, thereby invoking Appellee's right to counsel. *See Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). The trial court further concluded, *citing Gilbert v. California,*

that Appellee's confession was obtained in violation of his Sixth Amendment right to counsel in that the interrogation was conducted at a critical pretrial stage, thereby requiring counsel. *See Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

## II. ISSUES PRESENTED

The issues presented are (1) whether contact by an attorney purporting to represent Appellee, who made contact with law enforcement officers prior to the police-initiated interrogation of Appellee, is sufficient to have invoked Appellee's Fifth Amendment right to counsel; and (2) whether Appellee, who has merely been arrested but not formally charged, enjoys a Sixth Amendment right to counsel.

## III. DISCUSSION

 We first confront the issue whether contact made by Appellee's purported attorney to law enforcement officers on June 29, 1989 invoked Appellee's Fifth Amendment right to counsel prior to any police initiated communication or interrogation. We find that it did not.

In *Miranda v. Arizona,* 384 U.S. 436, 471–473, 86 S.Ct. 1602, 1626–27, 16 L.Ed.2d 694 (1966), the United States Supreme Court determined that in certain pretrial settings, the Fifth Amendment right against self-incrimination requires a protective shield against the State, and concluded that legal assistance should be integral to this shield. *See Holloway v. State,* 780 S.W.2d 787 (Tex.Crim.App.1989). That right against self-incrimination was extended, and further protected by the Supreme Court in *Edwards v. Arizona,* where the Court concluded that once an accused asserted his Fifth Amendment right to counsel, all interrogation must cease, and may begin again only if counsel has been made available, or if the accused himself initiates further communication. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981); *Holloway v. State,* 780 S.W.2d at 789.

In the instant case, Yvonne R. Guadarrama, an attorney purporting to represent

Appellee, contacted Detective Leyva of the El Paso Police Department on June 29, 1989. At the time of the call, Appellee was not formally accused of any offense, nor were any charges pending against him regarding the instant offense. The call to Detective Leyva by the attorney Guadarrama was for the express purpose of advising law enforcement that they were not to obtain any more statements from Appellee, that Appellee was not going to submit to any sort of testing, and further, that any contact between law enforcement and Appellee should be made through counsel's office. Appellee, as noted, subsequent to his arrest on November 30, 1989, at a police-initiated interrogation, was read his pertinent constitutional rights, indicated that he understood his rights, specifically his right to an attorney, but nonetheless wished to waive those rights and speak with Detective Leyva.

An accused's right against self-incrimination is personal and cannot be invoked or waived by anyone other than the accused. *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *Dunn v. State*, 696 S.W.2d 561 (Tex.Crim.App.1985). In the instant case, although Appellee's purported counsel advised police detectives that she represented Appellee at a time when he was a suspect and not an accused,[1] Appellee himself never requested counsel's presence during the police interview or at anytime prior to that interview. Furthermore, the trial court specifically found that Appellee understood his rights, specifically his right to an attorney, and voluntarily waived those rights prior to confessing to the offense for which he stands convicted. Accordingly, Appellee's claim that he was denied his Fifth Amendment right to counsel must fail.

■■■ Our analysis of Appellee's claim of denial of counsel, however, cannot stop there. Relying on *Gilbert v. California*, 388 U.S. at 263, 87 S.Ct. at 1951, the trial court ruled Appellee's confession was ob-

tained in violation of his Sixth Amendment right to counsel because the police-initiated interrogation was conducted at a critical stage of the proceedings without counsel. We disagree with the trial court's ruling because interrogation that occurs before a suspect is formally charged does not constitute a "critical stage of proceeding" in regard to the Sixth Amendment right to counsel.

Unlike the Fifth Amendment, the Sixth Amendment guarantees more than an entitlement to counsel upon invocation, it guarantees counsel at certain pretrial "critical stages". *See Holloway v. State*, 780 S.W.2d at 793. We must then answer the question as to whether Appellee, who was merely arrested but not formally charged, enjoyed a Sixth Amendment right to counsel.

The Sixth Amendment right to the assistance of counsel is not invoked until formal adversary judicial proceedings have been initiated. The mere arrest and subsequent questioning of a person does not constitute sufficient formalization of proceedings to trigger the Sixth Amendment requirement of counsel. *Nichols v. State*, 754 S.W.2d 185 (Tex.Crim.App.1988).

In the case before us, at the time of the police-initiated interrogation on November 30, 1989, Appellee was under arrest and being questioned as to the instant offense; however, no formal proceedings had been initiated against him. The Sixth Amendment right to counsel had not attached at the time of Appellee's arrest. Consequently, the question of whether or not Appellee's unilateral waiver of counsel was valid is irrelevant. Moreover, there was no evidence that Appellee had ever met with counsel or that an attorney-client relationship ever actually existed. Accordingly, Appellee's subsequent confession was not obtained in violation of his Sixth Amendment right to counsel, and the trial court erred in suppressing it. The Appellant's sole point of error is sustained.

---

1. A person who has previously been just a "suspect" becomes an "accused" within the meaning of the Sixth Amendment once a formal accusation has been made. *Michigan v. Jackson*, 475

U.S. 625, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986); *Holloway v. State*, 780 S.W.2d at 793, n. 5.

Having sustained Appellant's sole point of error, the judgment of the trial court is reversed and the caused remanded to the trial court.