**UNITED STATES of America,**

v.

**William Dale ENER and Clyde Lavon Smith.**

**No. 99–469.**

United States District Court, E.D. Pennsylvania.

June 30, 2003.

Robert E. Goldman, Esq., AUSA, Philadelphia, PA for the Government.

George A. Heitczman, Esq., Bethlehem, PA, Steven J. Rozan, Houston, TX, for Defendant William Dale Ener.

Robert E. Sletvold, Esq., Mark S. Refowich, Easton, PA, Richard B. Kuniansky, Houston, TX, for Defendant Clyde Lavon Smith.

James M. Becker, Esq., Philadelphia, PA for Petitioner Pauline Smith.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

William Dale Ener and Clyde Lavon Smith pled guilty on April 17, 2001 to one count each of conspiracy to distribute cocaine and possession of cocaine with intent to distribute. Defendant Smith was sentenced to a term of imprisonment of 151 months and defendant Ener was sentenced to a term of imprisonment of 97 months. Both men are currently incarcerated at

FCI Bastrop in Bastrop, Texas. Prior to their incarceration, bail for each defendant was set at $100,000 bond with a ten percent cash payment. The Clerk's office received each defendant's cash payment on April 23, 1999. Clyde Lavon Smith, through his counsel Mark Refowich, filed a Motion for Return of Bail on April 4, 2003. By Order of April 10, 2002, we directed the Clerk of the United States District Court to return the cash bail posted for Mr. Smith. Mr. Ener now moves for the return of the cash bail posted on his behalf, a sum of $10,000. Ms. Ellen Pauline Smith, Mr. Smith's wife, opposes Ener's motion on the basis that the $10,000 he used to fund his cash bail payment was in fact her money and that she is therefore the party to whom the Clerk should disburse the funds. Ms. Smith filed a motion for an evidentiary hearing on February 21, 2003 which we granted by our Order of May 19, 2003. We held the evidentiary hearing on June 25, 2003. We heard testimony from Ellen Pauline Smith and William Ener during the June 25, 2003 evidentiary hearing. Ener's counsel Steven Jay Rozan failed to appear at the hearing despite being Ener's only witness to key events surrounding his cash bail and our request for his presence.

Presently before us is the evidence and testimony presented at the hearing of June 25, 2003; Defendant Ener's Motion for Return of Bond Money, filed by counsel Stephen Rozan and George Heitzman on August 26, 2002 and August 28, 2002; Third Party Ellen Pauline Smith's Response in Opposition to Defendant William Dale Ener's Motion for Return of Bond Money, filed in the form of a motion by James Becker, Esq. on August 29, 2002; and the Motion by Third Party Ellen Pauline Smith For a Hearing on Her Motion for Return of Cash Bail, filed February 21, 2003. For the following reasons, we agree with Ms. Smith and order the Clerk to release the cash bail monies to her. We determine that we have no jurisdiction to decide the dispute between Mr. Smith and Mr. Ener as to the debt allegedly owed by the former to the latter.

## I. FACTS

In March of 1999, Ener and Mr. Smith obtained a tractor-trailer load of cocaine for transportation to New York City. On or about March 19, 1999, a confidential informant provided Ener, Mr. Smith and the FBI with directions to the meeting site. Upon arrival, however, Ener, Mr. Smith and the informant were unable to find a place to unload their cocaine because they required, but could not locate, a loading dock and a forklift. Ener and Mr. Smith then decided to return to the Allentown area and make the delivery the following day. Fearing that the shipment of cocaine might be lost, the FBI tipped off the Pennsylvania State Police about the tractor-trailer and its contents.

While driving along Interstate 78 in the Allentown area on or about March 20, 1999, Ener and Smith were pulled over by the Pennsylvania State Police for twice failing to signal while changing lanes, in violation of Pennsylvania state law. The two men subsequently were separated and questioned by the police. Ener and Mr. Smith gave conflicting stories, and the police sought to search the tractor-trailer. Ener gave his consent to the search, and the police discovered what appeared to be several hundred kilograms of cocaine. The police obtained a search warrant and seized approximately 831 kilograms, or 1,828 pounds, of cocaine from the truck. Ener and Mr. Smith were originally charged by the Commonwealth of Pennsylvania. Mr. Smith's bail was set at $40,000 by the state. The state charges were later dropped in favor of federal charges.

Ener and Smith were each indicted with one count of conspiracy to distribute cocaine and one count of possession of cocaine with intent to distribute, in violation of Title 21 U.S.C. §§ 846 and 841(a)(1), respectively. The defendants faced a mandatory minimum of ten years imprisonment and a maximum sentence of life imprisonment, five years to lifetime supervised release, a $8,000,000 fine and a $200 special assessment. The defendants pled guilty to both counts on April 17, 2001.

As part of his plea agreement, Ener agreed to cooperate with the Government and provide information concerning the offenses alleged in the indictment and any other crimes about which he had knowledge. He also agreed to testify as a witness when called upon to do so by the Government. Upon the Government's motion for a downward departure under Sentencing Guidelines § 5K1.1 and pursuant to 18 U.S .C. § 3553(e), this Court sentenced Ener to a term of imprisonment of 97 months, five years supervised release and a $200 special assessment. At the time of sentencing, we noted that the defendants had been in possession of the largest amount of cocaine we had ever seen in our more than twenty years on the bench.

Prior to his incarceration at FCI Bastrop in Bastrop, Texas, Ener had been released on $100,000 bond, of which ten percent (i.e., $10,000) had been posted in cash. It is this cash posting that Ener now moves to have returned to him. Third Party Ellen Smith, wife of co-defendant Clyde Lavon Smith, claims that she is the rightful owner of the bail funds and seeks to have the $10,000 returned to her.

On or about March 22, 1999, Ms. Smith arranged for $40,000 in funds to be wire transferred from her personal bank account at Wood Forest National Bank in Houston, Texas, to an account in the name of ABC Bail Bonds, Inc. at First Union National Bank in Trenton, New Jersey. These funds were meant to pay for her husband's $40,000 bail in the initial state criminal case. The state charges were then dropped and the funds were to be returned to Ms. Smith.

At some point after Mr. Smith and Ener were charged by the federal Government, but prior to their posting bail, Ener maintains that the two men reached an agreement regarding Mr. Smith's outstanding debts to Ener. Ener claims that Mr. Smith borrowed money totaling $13,000 from him on three occasions. Mr. Smith used the funds in connection with his trucking company. Ener provides no documentation showing such loans ever existed. He presented no written agreement or memorialization of the agreement. Nor did he provide bank, check or wire transfer receipts documenting the loan. While in prison, Ener claims the two men agreed that if Mr. Smith's wife posted bail on Ener's behalf and allowed Ener to keep the money upon the bail's exoneration, then Ener would release Mr. Smith's debt. Ener claims that he relayed the terms of the agreement to his attorney Steven Jay Rozan in Houston, but did not ask his attorney to relay the information to Ms. Smith. Neither Ener nor Mr. Smith attempted to gain Ms. Smith's consent to the agreement regarding her money prior to posting bail. Ener does not dispute the ownership of the money prior to the posting of bail. He testified at the hearing that the money belonged to Ms. Smith. In regards to his own bail money, Mr. Smith submitted an affidavit on June 5, 2003 stating that it "was posted on my behalf," and "[t]he money posted belonged to Pauline Smith." (Aff. of Clyde Lavon Smith filed on 6/5/03 at ¶¶ 2–3.) When asked why he thought Ms. Smith, and not solely Mr. Smith, should be responsible for a debt her hus-

band never told her about, Ener replied "because they're married." Mr. Smith, although present at the evidentiary hearing, did not testify to confirm Ener's tale. Rozan was not present at the hearing to confirm or deny whether Ener told him of the agreement despite our request of his presence.[1]

Prior to obtaining her refund from ABC Bail Bond, Ms. Smith met with Ener's attorney Stephen Jay Rozan and Mr. Smith's attorney Richard B. Kuniansky at their offices in Houston, Texas. Rozan and Kuniansky are law partners. Rozan and Kuniansky informed Ms. Smith that bail for each defendant required a $10,000 cash posting. Ms. Smith testified that Rozan asked her to post the cash bail for both men. Initially, Ms. Smith agreed to pay $10,000 for her husband's bail and $20,000 for his legal bills, but refused to post Ener's cash bail or pay his legal expenses. Rozan pressed her to pay his client's bail. She continued to refuse until Rozan as-

sured her that the money would be returned to her after the conditions of bail were satisfied. Ms. Smith, who had no independent advisor to consult,[2] relented. At no point did Rozan inform Ms. Smith that Ener and Mr. Smith reached an agreement regarding her funds. Ms. Smith did not assent to the agreement. She agreed to allow $10,000 of her $40,000 to be used for Ener's cash bail only on the condition that the funds would be returned to her. None of Ms. Smith's money went to pay for Ener's attorney's fees. Ms. Smith signed a release memorializing her permission to pay Ener's cash bail. No party was able to locate a copy of the release for our review.

At the direction of Kuniansky, who was counsel for Ms. Smith and her husband, ABC Bail Bonds released the $40,000 to Martin P. Mullaney, Kuniansky's local counsel. Ener's counsel, Steven Jay Rozan, then instructed Mullaney to use Ms. Smith's $40,000 to obtain two cashier's

---

1. Rozan did not appear, despite the fact that we ordered him to be present at the June 25 hearing. Rozan confirmed with the deputy clerk that he would appear, but called at the last minute on June 23, claiming to have a conflict. The next day he arranged for local counsel George A. Heitzman to represent Ener at the hearing and indicated that Heitzman was competent to handle the matter in his absence. When asked, Heitzman confirmed at the start of the hearing that he was prepared to represent Ener and agreed that Rozan's presence or testimony was not required.

2. It appears that at the time of the Houston meeting, Ms. Smith and Mr. Smith were both represented by Richard B. Kuniansky despite the appearance of adverse interests. (Third–Party's Memo. filed on 8/29/02 Ex. 5: Letter from Richard B. Kuniansky to Mervin Waxman dated April 20, 1999 (acknowledging joint representation of Mr. and Ms. Smith).) Mr. Smith sought bail while Ms. Smith wanted to protect her funds from forfeiture or rival claims. Ener and Mr. Smith, co-defendants in a criminal trial, were represented by partners in the same law firm despite their obvi-

ous adverse interests. Kuniansky's representation of Mr. and Ms. Smith, and Kuniansky and Rozan's representation of criminal co-defendants may have violated TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT § 1.06(b) (1995). The Rule states:

1.06 Conflict of Interest: General Rule
(b) In other situations and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:
(1) involves a substantially related matter in which that persons interests are materially and directly adverse to the interests of another client of the lawyer or the lawyers firm; or
(2) reasonably appears to be or become adversely limited by the lawyers or law firm's responsibilities to another client or to a third person or by the lawyers or law firms own interests.
This rule is modeled after ABA MODEL RULES OF PROFESSIONAL RESPONSIBILITY Rule 1.7 (1999). However, issues of ethical improprieties are not currently before the court.

checks, each in the amount of $10,000 and payable to Clerk, United States District Court. Mullaney deposited each cashier's check on April 23, 1999 with the United States District Court in order to meet the ten percent cash requirement of each defendant's appearance bond. The Clerk's Office issued Mullaney two receipts: (1) Receipt No. 500–1332 for Mr. Smith; and (2) Receipt No. 500–1333 for Ener. In addition to stating the date, court name, and location, the receipts provide headings so that the Clerk's Office cashier may provide the following information: cashier's name; form of tender; check number; case number; three Clerk's Office accounting codes; and the amount. At the bottom of each receipt, Defendant's name appears without a heading or designation. While the beneficiary of the bail bond No. 500 1333 is Ener, the receipt has no headings under which the Clerk's Office cashier may identify the payor or the remittee. Ener maintains that the Defendant's name at the end of the receipt signifies that the named Defendant posted bail as the payee and should be the individual to whom the Clerk of Court returns the funds as the remittee. Mullaney, and not Ener, physically appeared to post bail for Ener and Mr. Smith's behalf as Kuniansky and Rozan's agent. Ms. Smith maintains that she agreed to furnish the money based on representations made by her husband's counsel and Ener's counsel that upon completion of the case, the money would be returned to her. Accordingly, she alleges, the funds used for Ener's bail should have been deposited to the Clerk's Office under Ms. Smith's name on behalf of Ener. Neither Ener nor his counsel appear to have taken this step.

 Beginning in June 2001, Ms. Smith began to take action to secure return of her monies. She contacted Rozan several times via letter and telephone. Her attempts to have Rozan seek release of her monies went unheaded. A year later on June 22, 2002, Rozan promised to motion for the return of bail monies on Ms. Smith's behalf. Still he did not motion for release of the cash bail. Rozan continued to drag his feet until he filed the present motion August 26, 2002. However, the motion requests return of the funds to Ener instead of Ms. Smith. While Rozan is Ener's attorney and advocate, he did make representations to Ms. Smith that he was acting on her behalf.[3] Ms. Smith, who

---

**3.** Rozan's behavior towards Ms. Smith may have violated TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT Rule 4.03 and MODEL RULES OF PROFESSIONAL RESPONSIBILITY Rule 4.3. Rozan was dealing with an unrepresented party. Instead of identifying himself as not disinterested in the matter, Rozan held himself out to be Ms. Smith's counsel by agreeing to file a motion on her behalf against his own client's interests in a criminal matter. In Mrs. Smith's eyes, Rozan was her advocate in her quest for the return of the cash bail. We question whether Rozan instructed Ms. Smith to seek independent counsel. The Texas rule is identical to the ABA model rule:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the

unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding

MODEL RULES OF PROFESSIONAL RESPONSIBILITY Rule 4.3 (1983); TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT Rule 4.03 (1995).

Under Texas law, an attorney-client relationship is formed by a meeting of the minds:

The relationship may be expressly created by contract, or it may be implied from the actions of the parties. *Sutton v. Estate of McCormick*, 47 S.W.3d 179, 182 (Tex.App. 2001); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex.App.1997). The determination of whether there is a meeting of the minds must be based on objective standards of what the parties did and said and not on their alleged subjective states of

reviewed a copy of the motion prior to its filing, secured independent counsel to oppose Ener's motion filed by Rozan.

Ener moves to have the bail monies returned "to whatever respective individual posted same as evidenced by the Clerk's records." Ener and his counsel have neither denied nor confirmed any of the facts alleged by Ms. Smith. They offered no conflicting testimony or evidence. In fact, Ener's counsel has failed even to respond to Ms. Smith's motion to have the bail monies returned to her. Ener also has not provided any evidence to show that Ms. Smith is not the rightful owner of the cash bail. Ms. Smith requested the Court to schedule an evidentiary hearing to determine the proper disposition of the $10,000. On June 25, 2003, we held a hearing in Easton, Pennsylvania at which Ms. Smith, Mr. Smith and Mr. Ener were present and represented by counsel.

## II. JURISDICTION

■ We have jurisdiction over this criminal case under 18 U.S.C. § 3231 and jurisdiction over bail proceedings under 18 U.S.C. §§ 3041, 3141 and 3142. *See United States v. Arnaiz,* 842 F.2d 217, 219 & 221 (9th Cir.1988).[4] Federal Rule of Criminal Procedure 46(g) requires the court to "release any bail when a bond condition has been satisfied...." FED.R.CIV.P. 46(g).

All parties agree that the conditions of bail have been satisfied by Defendant Ener. In order to "release any bail" money posted on Ener's behalf, we must decide who should receive the remittance. *See Arnaiz,* 842 F.2d at 222 ("[T]he court's statutory duty of 'releasing any bail' could not be fulfilled without a determination of which party was entitled to receive it."). Therefore, this inquiry is within our ancillary jurisdiction over bail bonds. *See United States v. Rubenstein,* 971 F.2d 288, 293 (9th Cir.1992) (holding that the district court had ancillary jurisdiction to consider a third party's motion to release the bail money to him instead of the defendant's creditors "because it was 'necessarily ancillary' to release the bail funds."); *Arnaiz,* 842 F.2d at 222 ("[T]he return of the collateral [is] a necessary incident to the order of remission."); *United States v. Markiewicz,* No. A. 96–CR–122(RSP), 1998 WL 37592, at *1 (N.D.N.Y.1998) ("A district court has jurisdiction to consider a third party's motion seeking release of bail funds posted on behalf of a criminal defendant.").

■ Ener asserts that Mr. Smith owes him $13,000. We have no jurisdiction to determine any contractual dispute between Ener and Mr. Smith because it is irrelevant to the purpose of bail and is beyond

---

mind. *Terrell v. State,* 891 S.W.2d 307, 313 (Tex.App.1994). A question of fact exists when the evidence does not conclusively establish the existence of an attorney-client relationship.
*Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, LLP,* 105 S.W.3d 244, 254 (Tex.App. 2003). If Rozan's promise to file a motion on Ms. Smith's behalf and her reliance on his offer objectively formed an attorney-client relationship, then his failure to act with "reasonable diligence and promptness," when he took over one year to file a standard request for the release of bond monies after Ms. Smith requested him to do so may violate TEXAS DISCIPLINARY RULES OF PROFESSIONAL CON-

DUCT Rule 1.01 cmt. 6 and MODEL RULES OF PROFESSIONAL RESPONSIBILITY Rule 1.3. Both rules require prompt and diligent service to a client. However, issues of ethical improprieties are not currently before the court.

**4.** It seems that Ener's counsel Steven Jay Rozan is unsure which United States District Court has jurisdiction over Ener. Rozan filed Ener's motion in triplicate and addressed one copy each to the Easton Division, the Allentown Division and the Philadelphia Division of the Eastern District of Pennsylvania. The Eastern District of Pennsylvania does not have divisions. *See* 28 U.S.C. § 118.

our responsibility to remit bail monies pursuant to FED.R.CRIM.P. 46(g). *See Arnaiz*, 842 F.2d at 220 (refusing to adjudicate a contract dispute between defendant and bail bond company over the bond premium because it was outside the court's jurisdiction, but asserting jurisdiction over return of the bail bond itself). Bail exoneration under Rule 46(g) cannot be used to make a contractual claim enforceable on motion within a criminal proceeding.[5] *See id.* at 220–21. We have no jurisdiction to rule on the merits of Ener's contract dispute with Mr. Smith and our decision should not have any bearing on future proceedings in a court of appropriate jurisdiction. Mr. Smith's alleged debt to Ener is only considered because it is relevant for the narrow purpose of determining whether Ms. Smith intended title over her money to be conveyed to Ener prior to posting bail for Ener's appearance bond.

## III. DISCUSSION

Ellen Pauline Smith argues that the court should return the $10,000 posted as bail to her because she furnished the money that was applied on behalf of Ener. Contrary to Ms. Smith's position, Ener asserts that the court should return the bail posted to whomever is listed on the receipt issued by the Clerk's Office. Ener further maintains that the receipt demonstrates that the money belongs to him.

Neither party cites any authority for support, but the court has identified one case highly relevant to the present dispute. In *Bridges v. United States*, six defendants were indicted on narcotics charges and were released pending trial once the clerk of the court received the required cash bonds. 588 F.2d 911, 912 (4th Cir.1978). At the time the bonds were deposited, there was no indication that they had been posted by anyone other than each defendant for whom release was sought. The defendants were tried and convicted in the district court, sentenced to substantial prison terms, and ordered to pay sizeable fines. *Id.* Because the fines remained unpaid, the government moved that the bail money be held in trust pending any appeal. Shortly thereafter various friends and relatives of the six defendants came forward, claimed that they had advanced portions of the bond money, and petitioned that their money be returned to them.

Without holding an evidentiary hearing, the district court denied the petitions and ordered payment of the fines. The court reasoned, " 'there is a presumption that the money deposited by each defendant was his own where the names of third party claimants to the money did not appear of record in connection with the original deposits.' " *Bridges*, 588 F.2d at 912. On appeal, the Fourth Circuit remanded the case with directions to hold an evidentiary hearing to ascertain to whom the bail money "actually belonged." *Id.* at 912–13. Specifically, the court held that any bail funds belonging to the friends and relatives were unavailable to pay the fines if an evidentiary hearing established their legitimate claim to the funds. *Id.* at 913; *see also United States v. Bracewell*, 569 F.2d 1194, 1200 (2d Cir.1978) ("If monies paid on a defendant's behalf actually belong to a third party, then they are not 'available for payment.' ").

---

**5.** Such jurisdiction would be inappropriate because it would circumvent the strict requirements of 28 U.S.C. § 1332. Diversity jurisdiction is properly invoked in cases where there is complete diversity of citizenship between plaintiffs and defendants and where the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Ener and Mr. Smith are non-diverse Texans with only $13,000 in dispute. They may not confer diversity jurisdiction by consent in circumvention of § 1332. *See Meritcare Inc. v. St. Paul Mercury Ins., Co.*, 166 F.3d 214, 217 (3d Cir.1999).

■ We read *Bridges* as an implicit rejection of the district court's approach of applying a presumption that bail funds belong to a defendant where the names of third-party claimants do not appear of record in connection with a deposit. We believe that applying such a presumption is improper where a receipt does not identify a clearly designated payor or remittee. Rather than relying on a presumption when the receipt fails to indicate ownership, a court should conduct an evidentiary hearing for the purpose of deciding to whom the funds actually belong. But if a receipt does clearly designate a payor or remittee and a presumption is necessary to resolve a dispute regarding ownership of funds, "then the receipt issued by the clerk is a good starting point." *United States v. Rubenstein,* 971 F.2d 288, 296 (9th Cir. 1992). This approach is consistent with authority that rejects a presumption that money posted as bail belongs to the defendant. *See id.; United States v. Jones,* 607 F.2d 687, 688 (5th Cir.1979); *United States v. Parr,* 594 F.2d 440, 443 (5th Cir.1979); *United States v. Bursey,* 515 F.2d 1228, 1235 (5th Cir.1975); *Neely v. United States,* 357 F.Supp. 713, 717 (S.D.Fla. 1973). We adopt this approach in the absence of precedent from the Third Circuit or this court.

■ In this case, as an initial matter, we note that the receipt from the Clerk's Office does not identify who had deposited the bail funds on behalf of either Ener or Mr. Smith. Instead, each receipt lists information useful for record keeping, including the receipt number, the time of receipt, the case number, and the amount accepted. At the bottom of each receipt, a single name appears in capital letters with no additional designation. Ener contends that the appearance of his name at the bottom of Receipt No. 500–1333 conclusively establishes that he owns the $10,000 that is the subject of this case. The evidence does not support his contention. First, the presence of the name at the bottom of the receipt is ambiguous. It may indicate that he does in fact own the funds, but on the other hand, it may indicate merely that the funds have been applied on his behalf. However, we do know that based on testimony from the June 25, 2003 evidentiary hearing that Ener did not deposit the funds himself. Mullaney, local counsel for Mr. and Ms. Smith's lawyer, Kuniansky, appeared at the Clerk's Office and delivered a check for $10,000 on Ener's behalf. Second, Mr. Smith's name appears at the bottom of Receipt No. 500 1332, but it is undisputed that Mr. Smith did not own the $10,000 posted for his bond and that he later returned the money to Ms. Smith. (Aff. of Clyde Lavon Smith, filed June 5, 2003, ¶ 2–4). From that information we can conclude that the presence of a name at the bottom of a receipt from the Clerk's Office is not necessarily indicative of ownership. Consequently, because of the receipt's lack of clarity, Ener should not receive the benefit of a presumption of ownership. In addition, no presumption arises from the fact that Ener is the defendant who benefited from the posted bond. *See, e.g., Jones,* 607 F.2d at 688. To resolve the dispute, we then proceeded to hold the evidentiary hearing on June 25, 2003 in order to ascertain to whom the funds actually belonged.

■ At the hearing, Ms. Smith testified that on or about March 22, 1999 she arranged for a wire transfer of $40,000 from her personal bank account, held exclusively in her name, to ABC Bail Bond Company in connection with Mr. Smith's state law drug charges. When it became apparent that the state charges would be dropped in favor of federal charges, Mr. Smith needed only $10,000 to post a bond for his release, she explained. Ms. Smith

then met with Kuniansky and Rozan at their law offices, where Rozan persuaded her to provide $10,000 for Ener's bail bond as well. Ms. Smith testified that she relented upon Rozan's assurances that the money would be repaid to her. Ener then testified after Ms. Smith. He acknowledged that she provided the money to the attorneys in Houston, Rozan and Kuniansky. On cross-examination Ener confirmed that he had never entered into any communications with Ms. Smith regarding the satisfaction of a debt, but he was told by the attorneys that she would be posting his bail. Based on the testimony at the hearing, we find that the $10,000 at issue actually belonged to Ms. Smith and that it should now be returned to her by the Clerk's Office. The evidence of Ms. Smith's actual ownership is so strong that even if a presumption in Ener's favor were merited, she has certainly met the burden necessary to overcome that presumption.

## IV. CONCLUSION

For the forgoing reasons, the Clerk will be ordered to remit the $10,000 bail bond securing Defendant Ener's appearance to Ms. Smith pursuant to Rule 46(g). Ms. Smith provided the cash bail from her personal bank account. At no time did Ms. Smith intend to give Ener the money. We grant Ms. Smith's motion for the simple reason that the money is her money.

An appropriate Order follows.

### *ORDER*

AND NOW this 30th day of June, 2003, upon consideration of Defendant William Dale Ener's Motions for Return of Bond Money filed on August 26, 2002 and filed again on August 28, 2002 [# 108 and 109]; Third–Party Ellen Pauline Smith's Motion for Directing the Clerk of Court to Transfer Bail Monies Posted in the Name of William Dale Ener to Her, and for Return

of Bail Funds filed on August 29, 2002 [# 110]; it is hereby **ORDERED** that:

(1) Defendant William Dale Ener's Motions for Return of Bond Money [# 108 and # 109] are **DENIED;**

(2) Third–Party Ellen Pauline Smith's Motion for Return of Bail Monies [# 110] is **GRANTED;**

(3) The Clerk of Court **SHALL IMMEDIATELY REMIT** bail funds posted on behalf of William Dale Ener to Ellen Pauline Smith.