Maverick Laderick PLATTENBURG,
Appellant,

v.

The STATE of Texas, Appellee.

No. 09–97–211 CR.

Court of Appeals of Texas,
Beaumont.

Submitted July 27, 1998.

Decided Aug. 12, 1998.

Mark H. Fernandez, Baytown, for appellant.

Michael A. McDougal, Dist. Atty., Conroe, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

Maverick Laderick Plattenburg appeals his conviction and life sentence for capital murder. The State did not seek the death penalty. The brief presents nine points of error for our review.

■ The first two points of error concern the denial of a challenge for cause:

Point of error one: The court erred in not striking for cause the juror Mr. Hedrick.

Point of error two: The court erred in not allowing appellant an additional peremptory strike after appellant was forced to exercise a peremptory strike to strike Mr. Hedrick.

The following exchange occurred during voir dire:

THE COURT: I can't remember what your problem was.

MR. HEDRICK: Well, the question about whether I could give probation for ten years or less convicted of murder.

THE COURT: The question should be in the light of any form of intentional homicide that you can think of, whether it is a mercy killing, regardless of past provocations, regardless of the character of the defendant, regardless of the character of the victim, are you telling me—are you telling me your mind is completely closed to even consider probation?

MR. HEDRICK: No, some of the things that you just mentioned, no, I would certainly consider it probation.

THE COURT: So, in a murder case, it would be possible for you to consider the full range of punishment. There might be some areas where you certainly wouldn't give it, maybe you wouldn't even give a ten-year sentence for, but you would keep an open mind, wait until you heard the evidence.

MR. HEDRICK: Yes.

THE COURT: Okay. Any further questions?

MR. PINK: Yes, sir. I appreciate you coming up. I appreciate your response. I heard the Judge talk about mercy killing or something to that effect. Is that what you had in mind, you say you couldn't consider probation?

MR. HEDRICK: Yes, that would be one of the circumstances, but there are others.

MR. PINK: Could you give me another where you would consider probation for?

MR. HEDRICK: Just have to be the individual situation. I can't think of anything specific.

MR. PINK: Well, something bothers you about the concept of probation for murder with we that he why (sic) you're here we don't want to criticize you. We want to know how you honestly feel. I take it that how you feel about a probation when a person has been found guilty of murder of killing another person?

MR. HEDRICK: I'm sorry, I don't understand the question.

MR. PINK: In a situation where a person has been found guilty of murder, killing another person, taking a human life, some of the things like you have heard today, could you—honestly could you consider probation in a case like that?

THE COURT: In what kind of case?

MR. PINK: In a case where a person has been killed, murder.

MR. HEDRICK: Maybe there is insanity or maybe there's some other type of circumstance.

MR. PINK: What I'm saying, if he was insane, the person if he was insane, he wouldn't be here.

THE COURT: Only if he was found insane to the degree that met the legal standard. There might be mental conditions that did not amount to a complete defense in some cases, but it might mitigate the offense to some degree. So, you continue to say you could keep your mind open—

MR. HEDRICK: I could keep my mind open.

THE COURT: To the possibility? All right. I'm going to keep you. Thank you, sir. I will ask you to take a few minutes recess, then come back. All right.

The trial court denied defense counsel's challenge for cause.

At the conclusion of jury selection, defense counsel asked for an additional peremptory strike because "we run out of strikes and there is another juror, I think it is Juror Number 11. We felt that Juror Number 18, I think it was, should have been struck for cause and we ask for one additional strike ... that we may use on another juror."

The record does not contain the jury lists, and Plattenburg's designation of record does not ask that they be included in the clerk's record. We cannot discern whether defense counsel exercised a strike to remove Hedrick from the panel. Assuming the record supports such a conclusion, we find no abuse of discretion in the trial court's rulings. Prospective jurors must be willing to consider the full range of punishment applicable to the crime charged and a person who testifies unequivocally that he could not do so is properly the subject for a challenge for cause. *Banda v. State*, 890 S.W.2d 42, 55 (Tex.Crim.App.1994). A challenge for cause must be granted against a prospective juror who admits bias but states that the bias can be set aside; the trial court still retains discretion to determine whether the prospective juror was biased in the first place. *Quinn v. State*, 958 S.W.2d 395, 403 (Tex. Crim.App.1997). Although defense counsel argued the trial court's examples were not close enough to the facts of the case, hypothetical fact situations can be used to explain the application of the law, so long as they are not used to commit the venire person to particular facts. *Heiselbetz v. State*, 906 S.W.2d 500, 511 (Tex.Crim.App.1995). Venireperson Hedrick stated he would keep his mind open and indicated a willingness to consider the full range of punishment for murder.

Furthermore, any error would be harmless since Plattenburg stands convicted of an offense for which probation is not available. Because he was convicted of capital murder, any error relating to the punishment range of the lesser-included offense of murder made no contribution to appellant's conviction or punishment. *King v. State*, 953 S.W.2d 266, 268 (Tex.Crim.App.1997). Points of error one and two are overruled.

Plattenburg's next two points of error concern the admission of his confessions:

Point of error three: The trial court erred in admitting the written statements of appellant in view of the fact that appellant was not allowed to communicate with his attorney.

Point of error four: The court erred in admitting the written statements of appellant in view of the fact that appellant was not taken before a magistrate in a timely fashion as required by Article 15.17(a) and Article 15.18 of the Texas Code of Criminal Procedure.

Point of error three urges the trial court erred in admitting written statements of the accused taken outside the presence of counsel after Plattenburg's mother hired a lawyer to represent him. This case is similar to *Dams v. State*, 872 S.W.2d 325, 328–29 (Tex.App.—Beaumont 1994, no pet.). In *Dams,* we noted criminal proceedings commenced when the appellant was arrested pursuant to a warrant obtained through complaint to a judge. *See Barnhill v. State*, 657 S.W.2d 131, 132 (Tex.Crim.App.1983). Police interrogation is a "critical stage" for Sixth Amendment purposes. *Holloway v. State*, 780 S.W.2d 787, 793 (Tex.Crim.App.1989). Once the Sixth Amendment right to counsel attaches, if the accused is represented by counsel the police may initiate interrogation only through notice to defense counsel, and a defendant's unilateral waiver of his Sixth Amendment right to counsel is invalid. *Id.* at 796. In *Dams*, we held the appellant's Sixth Amendment right to counsel had attached, but upheld the trial court's finding that the attorney-client relationship had not been established. As is the case here, Dams had not conferred with the attorney, nor did he inform the officers he was represented by counsel. Plattenburg did not tell the officers he had a lawyer, or that he wanted a lawyer, and the officer who took the statement testified he was unaware a lawyer had been hired by Plattenburg's mother and was looking for him at the station.

Plattenburg's situation is also similar to the facts of *Terrell v. State*, 891 S.W.2d 307,

314 (Tex.App.—El Paso 1994, pet. ref'd). After Terrell was arrested, his mother retained an attorney to represent him. This attorney had represented Terrell in the past, but Terrell did not tell the police that he had an attorney before waiving his right to an attorney and confessing. The El Paso Court of Appeals held the evidence supported the trial court's implied finding that no attorney-client relationship existed at the time the written statement was obtained.

Appellant places much emphasis on the fact that Mr. Pink was trying to contact him. In *Lucas v. State,* 791 S.W.2d 35, 47–48 (Tex.Crim.App.1989), counsel had written a letter invoking his client's constitutional rights. The Court of Criminal Appeals held: "[I]t would be counterproductive to our system of justice to extend this rule as a prophylactic device to allow counsel to invoke the constitutional protection on behalf of a criminal defendant who has not yet met with counsel and has not himself expressed a desire to invoke that protection." The Court cited its original opinion in *Holloway v. State,* 691 S.W.2d 608 (Tex.Crim.App.1984), *vacated,* 475 U.S. 1105, 106 S.Ct. 1508, 89 L.Ed.2d 908 (1986). A few months after *Lucas* was decided, the Court reversed Holloway's conviction. "This Court has in the past rejected the claim that someone other than the accused may invoke his right to counsel. *See Dunn v. State,* 696 S.W.2d 561 (Tex. Crim.App.1985); *Kelly [v. State,* 621 S.W.2d 176 (Tex.Crim.App.1981) ]. The record clearly reflects appointed counsel wrote the letter before consulting with his client on the case." *Lucas,* 791 S.W.2d at 48. *Lucas* has not been overruled. The crucial issue is whether the attorney-client relationship existed, for if it did, the accused's waiver of his right to counsel would be ineffective. The distinction between *Lucas* and *Holloway* is one present in this case. We find no evidence that Plattenburg was expecting a lawyer to arrive, asked for a lawyer, or knew his mother had hired one for him.

Both *Dams* and *Terrell* are notable for the lack of personal communication between the lawyer and the accused, and for the lack of actual knowledge on the part of the police that an attorney might have been retained to represent the accused. The situation before us, as in those cases, is distinguishable from *Holloway.* In *Holloway,* at the time of the police-initiated interrogation, the appellant had been indicted for capital murder, had been appointed counsel, had met with counsel, and the attorney-client relationship was established; as such, the appellant's unilateral waiver of his Sixth Amendment right was invalid despite his having received the required *Miranda*[1] warnings. *Holloway,* 780 S.W.2d at 796. Likewise, in *Upton v. State,* 853 S.W.2d 548 (Tex.Crim.App.1993), the appellant's ex-mother-in-law hired an attorney, who met with the appellant and told the police that he told the appellant not to talk to the police unless he was present.

Plattenburg had been arrested, but had not yet been magistrated, was not under indictment, and had never met with or spoken to Mr. Pink. We hold the evidence supports an implied finding that no attorney-client relationship existed between Plattenburg and Pink at the time Plattenburg gave his written statement. Therefore, his *Miranda* waivers were effective.

■ Plattenburg also contends the confessions were taken in violation of Article 15.17(a) of the Texas Code of Criminal Procedure, which provides the arresting officer "shall without unnecessary delay take the person arrested or have him taken before some magistrate of the county where the accused was arrested...." Tex.Code Crim. Proc. Ann. art. 15.17(a) (Vernon Supp.1998).

Plattenburg was arrested around 8:20 p.m. He was at the Mykawa Substation by 9:00, and gave his written statements at around 9:30 and 10:30. Plattenburg was magistrated around 1:00 a.m.

■ The failure to take an arrested person before a magistrate in a timely manner will not invalidate a confession unless there is proof of a causal connection between the delay and the confession. *Cantu v. State,* 842 S.W.2d 667, 680 (Tex.Crim.App.1992). Moreover, an unreasonable delay in presenting an arrested person before a magistrate

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

will not vitiate an otherwise voluntary confession if the arrestee was properly advised of his *Miranda* rights. *Id.* Plattenburg makes no attempt to demonstrate any connection between the delay in taking him to a magistrate and the statements he gave to the officers, other than to argue that it was compounded by Mr. Pink's thwarted efforts to find him. The trial court apparently believed the officers when they said they didn't know Mr. Pink wanted to see Plattenburg. We hold the trial court did not abuse its discretion in ruling the written statements were admissible at trial. Points of error three and four are overruled.

Point of error eight contends:

The trial court erred in not making written findings or conclusions for the record, concerning the voluntariness and admissibility of appellant's written statements, as required by Article 38.22, section 6 of the Texas Code of Criminal Procedure.

We abated the appeal and remanded the cause to the trial court for entry of the written findings required by statute. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979); *see Green v. State,* 906 S.W.2d 937 (Tex.Crim.App.1995), *cert. denied,* — U.S. ——, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). The written findings are contained in a clerk's record filed in this appeal. Point of error eight is overruled.

■ Point of error five urges:

The court erred in limiting appellant's counsel's closing argument to thirty-five minutes.

Before oral argument commenced, Plattenburg's lawyer objected to there being a time limit on "the lawyer's ability to eloquate." The trial court denied the request for additional time, noting the testimony took less than two days and "seemed pretty straightforward." We do not know how long Mr. Pink actually spent in his address to the jury, but his argument comprises about 23 pages of the statement of facts and thoroughly covers the charge. The trial court did not cut off his argument, he did not request additional time at the end of his argument, nor did he identify matters he desired to discuss with the jury which he had not yet

covered. We find no abuse of discretion in allotting thirty-five minutes for argument. *See Hernandez v. State,* 506 S.W.2d 884, 886 (Tex.Crim.App.1974). Point of error five is overruled.

Point of error six contends:

The evidence is insufficient to corroborate the testimony of accomplice witnesses and support the conviction.

■ "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). In reviewing the sufficiency of corroborative evidence, we first eliminate from consideration the testimony of the accomplice witness, examine the testimony of the other witnesses to ascertain if there is independent evidence which *tends to connect* the accused with the commission of the offense. *Hernandez v. State,* 939 S.W.2d 173, 176 (Tex.Crim. App.1997) (emphasis added). It is not necessary that the nonaccomplice evidence establish the accused's guilt beyond a reasonable doubt, nor must it directly link the accused to the commission of the offense. There need be only some nonaccomplice evidence which tends to connect the accused to the commission of the offense alleged in the indictment. *Id.* Under most circumstances, confessions will be sufficient to corroborate the accomplice witness. *Romero v. State,* 716 S.W.2d 519, 522 (Tex.Crim.App.1986).

■ Plattenburg's second statement to the police places him at the scene of the crime. In this statement, he admits: 1) he and Clarence Clewis both got out of the van; 2) the van was next to a light-colored GM car with chrome wheels; 3) Clewis went over to the passenger side of the car; 4) Plattenburg was standing by the door of the van; 5) the car started rolling; 6) he jumped back in the sliding door of the van; 7) the van drove off without Clewis; 8) Clewis drove off in the car; 9) he looked out for cars while they put the car's tires in the van.

Plattenburg was less than completely candid about what happened that night, but

some of the pertinent details were supplied by the two women who were riding in the victim's car. Stephanie LeBlanc testified the van pulled up next to the car and she saw a gun inside the van, and a guy holding a gun shot through the windshield. The man broke her car window and got into the car, shooting the driver while sitting in her lap. She jumped out of the car. Her companion, Kimberley Barnes, testified the van's sliding door opened and someone shot a gun from outside of the van. The car started rolling. A man got into the car and she heard some more shots. The car stopped and she got out of the car.

Vladimir Parungao, the pathologist who performed the autopsy, testified there was a grazing gunshot wound on the left side of the neck, a gunshot wound of entrance on the left arm, and a gunshot wound of entrance on the right upper side of the back and exit on the left side of the chest. Dr. Parungao recovered a bullet from the deceased's left arm.

Officer Jimmy Chilcutt testified he recovered a bullet from the neck of the deceased and another bullet which he found laying on the deceased's chest.

Royce Sillivan of the Montgomery County Sheriff's Office testified the bullets recovered by Officer Chilcutt and the bullet recovered by Dr. Parungao were fired from two different guns.

Plattenburg placed himself exactly where his accomplices said he was, at the very moment someone was shooting Mr. Bell. Two different guns were used, making wounds from two different directions. A jury could reasonably infer Plattenburg was at the side of the van shooting Bell. We find the accomplice witness testimony was corroborated by sufficient facts which tend to connect Plattenburg to the commission of the offense. Point of error six is overruled.

■ Point of error seven urges:

The Court erred in denying Appellant a hearing outside the presence of the jury concerning the voluntariness and admissibility of his written statements.

After the close of the State's evidence, defense counsel moved for an instructed verdict, which was denied, and then made the following objection:

MR. PINK: At this time, Your Honor, we respectfully renew our request for mistrial, point out to the Court we further object to the denial—to denial of the defendant's right to present evidence concerning the events and circumstances surrounding the shooting of Mr. Bell. Also deny him the right to prove police detectives and HPD used—made Mr. Clewis gives false confession. We object to denial of the right to prove the shooting and/or the taking of the car was not result of conspiracy by the witness that—he that later refused to talk or testify or whatever, Mr. Emerson James, as to the testimony that he did give. And we would ask this Court to grant us a mistrial.

The trial court reminded defense counsel that he had already conducted a full *Jackson v. Denno* [2] hearing outside the presence of the jury, and that defense counsel had made no further objection when the statements were admitted into evidence. Counsel continued:

MR. PINK: What I was saying, Your Honor, is that, you know, the case ended in such a way that I really wasn't prepared—my thinking was that we would—they had other witnesses, which I was led to believe, but anyway, the point is is that I—I have asked the Court to allow me to put my client on to testify only to the voluntariness of the statement and his request for a lawyer and for no other purpose. I don't even have to do that in front of the jury. I can do that outside the presence of the jury.

The court informed defense counsel that he could still submit the voluntariness issue before the jury, but if Plattenburg testified in front of the jury he would be on for all purposes. Defense counsel continued:

MR. PINK: I have no problem with it, but that is just like any other evidence, I understand the Court can always tell the jury not to consider it. So I ask the Court

2. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

to allow him to—or to finish up the [*Jackson v. Denno*] hearing or the Motion to Suppress hearing and allow him to testify regarding the police officer refusal to let him see his attorney after—after the—after he has explained to the—to the policeman that he didn't understand the alleged rights that was supposed to be read.

THE COURT: Denied. Bring in the jury, please.

On appeal, Plattenburg contends the trial court harmed him by not letting him testify concerning only the voluntariness of his confession. He had the benefit of a full hearing before the trial court on the voluntariness of his written statement. The record reflects Plattenburg had ample opportunity to testify at the suppression hearing, and chose not to testify. Once the statements had been admitted into evidence, there was no reason for the trial court to conduct another hearing. Plattenburg's own testimony could not be newly discovered or newly available evidence.

■ When an accused voluntarily testifies before a jury he is subject to the same rules governing direct examination and cross-examination as any other witness. *Bryan v. State*, 837 S.W.2d 637, 643 (Tex. Crim.App.1992). He cannot testify only for a limited purpose. *Cantu v. State*, 738 S.W.2d 249, 256 (Tex.Crim.App.1987). The privilege against self-incrimination is either waived, or it is not. Plattenburg could not choose to testify before the jury on only those matters he chose to discuss. The trial court did not abuse its discretion. Point of error seven is overruled.

■ The final point of error avers:

The court erred in failing to submit to the jury a charge concerning whether or not appellant's two written statements were obtained in violation of Article 38.23, Texas Code of Criminal Procedure, as a predicate to considering the same as evidence.

Plattenburg contends the issue of the voluntariness of his written statements was raised by his mother, Jesse Plattenburg, who testified that around 6:00 or 7:00 p.m. the police arrived at her home with a search warrant. They told her they had an arrest warrant for her son, and she told them he was at work. She told them she would be talking to her attorney about that. She went to Mr. Pink's house. Mr. Pink called a number on a card the police had given her. They went to the police department together. They were there for three or four hours. They did not get to see Plattenburg during that time.

■ The trial court must instruct the jury to disregard evidence obtained illegally if the defendant requests the instruction and raises a fact issue concerning the manner in which the evidence was obtained. *Thomas v. State*, 723 S.W.2d 696, 707 (Tex.Crim.App. 1986). Plattenburg did not request an article 38.23 instruction. *See* TEX.CODE.CRIM. PROC. ANN. art. 38.23 (Vernon Supp.1998). Failure to request the instruction waives error. *Kelly v. State*, 669 S.W.2d 720, 726 (Tex.Crim. App.1984). Point of error nine is overruled.

The judgment and sentence of the trial court are affirmed.

AFFIRMED.