# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00465-CR

**Luke Masood Arabzadegan, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT NO. D-1-DC-02-500454, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## C O N C U R R I N G  O P I N I O N

I agree that Arabzadegan was not represented by counsel at the time of his confession and thus, with the exception of footnote 7, I join the majority opinion. I write separately because I believe that an accused must personally assert his right to counsel to invoke his Sixth Amendment right. I would hold that an accused has invoked his right to counsel under the Sixth Amendment only when he personally makes the request or somehow indicates to the police that he is already represented by counsel. Without such an assertion, I believe that an accused may validly waive his right to counsel under both the Fifth and Sixth Amendments even if counsel has been retained to represent him.

The Sixth Amendment guarantees the accused the right to "rely on counsel as a 'medium' between him and the State." *Maine v. Moulton*, 474 U.S.159, 176 (1985). If invoked, the police must respect the accused's choice to seek counsel and must not act in a manner that dilutes

the protection afforded by the right, and it is a violation of the Sixth Amendment for the police to *knowingly* circumvent the accused's right to have counsel present during "a confrontation between the accused and a state agent." *Id.* at 171, 176. "If an accused is interrogated after the right to counsel has attached, and a statement obtained, the police may not use that statement against the accused unless counsel was present or waived when the statement was obtained." *Robinson v. State*, 851 S.W.2d 216, 224 (Tex. Crim. App. 1991).

If the police interrogate an individual after he asserts his right to counsel and after his Sixth Amendment right has attached, "any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Michigan v. Jackson,* 475 U.S. 625, 636 (1986). "Just as written waivers are insufficient to justify police-initiated interrogations after the request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the *request for counsel* in a Sixth Amendment analysis." *Id.* at 635 (emphasis added).

In determining whether an accused has waived his Sixth Amendment right, courts should "indulge every reasonable presumption against waiver." *Id.* at 633. As a result, the burden of establishing a valid waiver falls on the State. *Id.*; *Upton v. State*, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993) (holding that burden is on State); *see also Robinson*, 851 S.W.2d at 224 (holding that burden of showing that waiver of counsel was made "voluntarily, knowingly, and intelligently" falls on State). However, in determining whether the right was validly waived, the key inquiry is whether the accused was "made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel." *Patterson v. Illinois*, 487 U.S. 285, 292-93 (1988). Waiving the right to an attorney after being given

2

*Miranda* warnings can constitute an effective waiver of the Sixth Amendment right. *See id.* at 293, 296, 298. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements . . . , the analysis is complete and the waiver is valid as a matter of law." *Id.* at 297; *see also Robinson*, 851 S.W.2d at 224 (holding that waiver is shown as matter of law if accused "(1) who has not yet retained or been appointed counsel (2) decides voluntarily not to rely on his right to counsel and (3) that decision is made with the understanding that he could remain silent and request a lawyer and that the State could use any statement he gave against him" (citations omitted)).

I believe that the Sixth Amendment right to counsel, as expressed by the plain language of the amendment and by the opinions dealing with it, is a personal right of the accused and may not be invoked by an attorney or anyone else on behalf of the accused.[1] *See* U.S. Const. amend. VI ("*accused shall enjoy the right* to . . . Assistance of Counsel" (emphasis added)). Further, I believe that to properly invoke the right, the accused must assert his right to counsel or inform the police in some manner that he has retained counsel. *See Plattenburg v. State*, 972 S.W.2d 913, 916 (Tex. App.—Beaumont 1998, pet. ref'd) (holding that confession was not obtained in violation of Sixth Amendment and noting that Plattenburg did not tell officers that he had or wanted legal representation); *Terrell v. State*, 891 S.W.2d 307, 314 (Tex. App.—El Paso 1994, pet. ref'd)

---

[1] The dissent states that by concluding that the Sixth Amendment must be personally invoked, I have "effectively equate[d] the Sixth Amendment right with the Fifth Amendment right." I disagree. Although I believe both rights must be personally invoked, I also recognize that the rights apply in different contexts and provide fundamentally different protections and privileges.

3

(concluding that there was no Sixth Amendment violation and noting that accused never mentioned prior relationship with attorney or that he believed that he was represented).

Although the burden is on the State to prove a valid waiver of the right, I believe that the State's burden is only to demonstrate that the waiver was made voluntarily and knowingly, not to demonstrate that no attorney-client relationship actually existed. If the State demonstrates (1) that the accused voluntarily waived his right to counsel after being properly informed of his rights and (2) that, prior to and during the interrogation, an accused did not mention that he wanted to speak to a lawyer, that he had a lawyer, or that he asked someone to hire him a lawyer, then I believe that the State has satisfied its burden. *Cf. Patterson*, 487 U.S. at 297-98 (rejecting argument that it is more difficult to waive Sixth Amendment right to counsel than to waive Fifth Amendment right).

I believe that requiring a personal invocation of the right is consistent with the history of the right and properly balances the various interests at stake. First, the language in the cases concerning the right to counsel under both the Fifth and Sixth Amendments demonstrates that the right to counsel is something that the accused must assert to be effective. A good example of this is found in *Patterson v. Illinois*. In *Patterson*, the Supreme Court concluded that an individual's waiver of his right to an attorney after being given the *Miranda* warnings constituted a valid waiver under the Sixth Amendment. 487 U.S. at 296. In making its decision, the Court noted "as a matter of some significance that the *petitioner* had not retained, or accepted by appointment, a lawyer to represent him at the time he was questioned." *Id.* at 290 n.3 (emphasis added). Indeed, the Court stated that the "[*p*]*etitioner* . . . at no time sought to exercise his right to have counsel present" and that had the "*petitioner indicated* he wanted the assistance of counsel, the authorities' interview

4

would have stopped, and further questioning would have been forbidden." *Id.* at 290-91 (emphasis added). In discussing the applicability of prior Fifth Amendment precedent in the Sixth Amendment context, the Court stated that the essence of prior cases concerning the right to counsel is "[p]reserving the integrity of an *accused's choice*" to interact with police through his attorney or to "go it alone." *Id.* at 291 (emphasis added). The Court reasoned that if an accused "knowingly and intelligently" decides to go it alone, "we see no reason why the uncounseled statements he then makes must be excluded at his trial." *Id.*[2]

Similar statements were also made by the court of criminal appeals in *Holloway v. State*, 780 S.W.2d 787 (Tex. Crim. App. 1989), and *Lucas v. State*, 791 S.W.2d 35 (Tex. Crim. App. 1989). When deciding whether an attorney-client relationship existed in *Holloway*,[3] the

---

[2] In a footnote to its opinion in *Patterson*, the Supreme Court commented on the possibility that the police might interfere with the attorney-client relationship. Footnote nine reads, in relevant part, as follows:

> [W]e have permitted a *Miranda* waiver to stand where a suspect was not told that *his lawyer* was trying to reach him during questioning; in the Sixth Amendment context, this waiver would not be valid.

*Patterson v. Illinois*, 487 U.S. 285, 297 n.9 (1988) (emphasis added). This comment has no bearing on the facts of this case. First, the statement presupposed that an attorney-client relationship was in existence when it stated that the *accused's* attorney was trying to reach him. There is no indication that Arabzadegan formed an attorney-client relationship with either Turner or Saegert. Second, I do not read that statement to mean that there is no duty imposed on the accused to indicate to the police, in some manner, that he would like to be appointed counsel, has retained counsel, or thinks that counsel may have been retained for him. If the police prevented an accused's attorney from seeing the accused after he made any of these types of statements, then any waiver of his right to counsel would indeed be invalid.

[3] After being appointed an attorney, Holloway was questioned by the police. *Holloway v. State*, 780 S.W.2d 787, 789 (Tex. Crim. App. 1989). The court concluded that the right to counsel had attached, that the attorney-client relationship had been established, and that, therefore, the unilateral waiver of his right to counsel without his counsel being present was invalid. *Id.* at 796.

5

court reasoned that "[*i*]*nvocation of counsel is therefore essential* to bar further police contact with a suspect in the Fifth Amendment context or an accused in the *Sixth Amendment* context." 780 S.W.2d at 790 (emphasis added). Further, the court explained that the decisions in *Edwards* and *Jackson* were concerned with providing "an *accused* or suspect—not the attorney—with the means by which he may effectuate a decision to not deal with authorities alone." *Id.* (emphasis added).

Although *Lucas* involved the Fifth and not the Sixth Amendment, the court made similar statements regarding an individual's burden to invoke the right to counsel. In *Lucas*, the court had to determine, in part, whether an attorney, who had never met with the accused, could effectively invoke the accused's Fifth Amendment right to counsel on behalf of the accused and stop an interrogation. *See generally* 791 S.W.2d 35. The lawyer faxed a letter to the sheriff's department, purporting to invoke Lucas's Fifth Amendment right. *Id.* at 47. The court stated that it would be counterproductive to "allow counsel to invoke the constitutional protection on behalf of a criminal defendant who has not yet met with counsel and has *not himself expressed a desire to invoke that protection*." *Id.* (emphasis added). Further, the court stated that "[t]he right to counsel is considered *invoked* where a *person indicates he* or *she* desires to speak to an attorney or have an attorney present." *Id.* at 45 (emphases added); *see also Jackson,* 475 U.S. at 633, 636 (holding that courts are required to give "a broad, rather than a narrow, interpretation to a *defendant's request* for counsel," and, as in Fifth Amendment context, "the *assertion* is no less significant, and the need for additional safeguards no less clear, when the *request* is made at an arraignment and when the basis for the claim is the Sixth Amendment"; further holding that if police initiate interrogation after "a *defendant's assertion*" of right to counsel, waiver is ineffective (emphases added));

6

*Moran v. Burbine*, 475 U.S. 412, 426 (1986) (holding that *Miranda* gives "the *defendant* the power to exert some control over the course of the interrogation"); *Moulton*, 474 U.S. at 170, 176 (holding that once "the right to counsel has attached and *been asserted*, the State must" honor it; also holding that State has obligation "not to act in a manner that circumvents the protections accorded the accused by *invoking this right*" (emphases added)).

In addition, the analysis in *Moran v. Burbine*, although limited to the Fifth Amendment context, strongly indicates that the right to counsel is something that an individual must assert to be effective and seems to have equal applicability in the Sixth Amendment context.[4] In *Moran*, the Supreme Court had to determine whether the failure of law enforcement to inform an accused that a public defender had called the police station on his behalf violated his Fifth Amendment right to an attorney. Burbine's sister called the public defender's office to try to obtain assistance for Burbine, but Burbine did not realize that his sister was trying to get him an attorney. 475 U.S. at 416-17. The attorney called the police station and informed the police that Burbine was represented by counsel. *See id.* at 417. The police interrogated Burbine shortly after the phone call without the attorney being present. *Id.*

In reaching its conclusion that Burbine validly waived his right to counsel after being given the *Miranda* warnings, the Court reasoned as follows:

---

[4] Burbine also contended that his Sixth Amendment rights were violated by the trial court's failure to exclude his inculpatory statements. *Moran v. Burbine*, 475 U.S. 412, 428 (1986). However, the Court concluded that because the interrogation took place before the initiation of adversary judicial proceedings, his Sixth Amendment right to counsel had not attached and, therefore, no violation could have occurred. *See id.* at 425, 430-32.

7

> Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right. . . . No doubt the additional information would have been useful to respondent; perhaps even it might have affected his decision to confess. But we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights. Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

*Id.* at 422-23 (citations omitted). Further, the Court stated that the withholding of information "is only relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Id.* at 423-24. In addition, the Court concluded that it was unwilling to adopt a rule that required the police to inform a suspect of the efforts of an attorney to reach him. *Id.* at 425. Finally, the Court stated that it was unwilling to expand the requirements listed in *Miranda* to include a requirement that the police "keep the suspect abreast of the status of his legal representation." *Id.* at [5]

---

[5] In *Moran*, the Court did say that "once the right has attached, it follows that the police may not interfere with the efforts of the *defendant's attorney* to act as a "'medium" between [the suspect] and the State' during the interrogation." *Moran*, 475 U.S. at 428 (emphasis added and removed) (quoting *Maine v. Moulton*, 474 U.S.159, 176 (1985)). However, the Court did not say that the actions of the attorney in *Moran* would be enough to establish an attorney-client relationship for Sixth Amendment purposes, nor did it say that there was no requirement that the accused notify the police or indicate in some way that he is or may be represented by counsel to properly invoke the Sixth Amendment right. Further, in describing the importance of the Sixth Amendment, the Court stated that the "Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor." *Id.* at 430.

Additionally, the need for simplicity and a bright-line rule also weighs in favor of requiring an individual to invoke the right to counsel for himself. In *Miranda*, the Court stated that one of the purposes of its holding is "to give concrete constitutional guidelines for law enforcement agencies and courts to follow." 384 U.S. at 441-42. It is consistently expressed in the case law interpreting *Miranda* that, due to its simplicity, the bright-line rule adopted by the Supreme Court is helpful to both the State and the accused. *See, e.g.*, *Arizona v. Roberson*, 486 U.S. 675, 680 (1988) (opining that one of principal advantages of *Miranda* is "the ease and clarity of its application"); *New York v. Quarles*, 467 U.S. 649, 657-58 (1984) (noting that to preserve clarity of its holding, Court has refused to expand *Miranda*'s holding despite repeated requests); *Fare v. Michael C.*, 442 U.S. 707, 718 (1979) (explaining that holding in *Miranda* "has the virtue of informing police and prosecutors with specificity as to what they may do in conducting custodial interrogation, and of informing courts under what circumstances statements obtained during such interrogation are not admissible"; specifying that "gain in specificity" outweighs burdens imposed by *Miranda*). A bright-line rule in the Sixth Amendment context will aid the police because it clearly informs them when the Sixth Amendment right to counsel is invoked and therefore when the interrogation must stop. This provides the assurance that admissions obtained through questioning will not later be deemed inadmissible despite the fact that the police believed that they had satisfied all the necessary prerequisites to question an accused. Finally, it would aid courts in determining whether a confession was obtained in violation of the accused's Sixth Amendment right to counsel.

A contrary rule provides no guidance as to what actions the police should engage in when a lawyer asserts that he is invoking an accused's Sixth Amendment right while the accused is

9

being questioned, but the accused has made no indication that he had retained or wanted to employ the services of an attorney. If the lawyer's statements are treated as fully invoking the right, then it stands to reason that simply obtaining another confirmation from the accused that he did not want to have the assistance of counsel would be insufficient to constitute a valid waiver. *See Holloway*, 780 S.W.2d at 795 (holding that if valid attorney-client relationship exists and Sixth Amendment right has attached, relationship may not be dissolved in absence of counsel); *see also Upton*, 853 S.W.2d at 553 (holding that where attorney-client relationship exists, accused's unilateral waiver of right to counsel is invalid for Sixth Amendment purposes). Rather, it would seem that despite the fact that the accused never asked for a lawyer, the police would have to allow the lawyer or another lawyer to consult with the accused in order to obtain a valid waiver. Requiring this type of unsolicited and yet mandatory consultation with an attorney fails to consider the possibility that there are situations, including domestic disputes and organized criminal activity, in which an accused might legitimately not want to speak with or employ the services of an attorney hired by another individual.

If the lawyer's statement is treated as something less than a complete invocation of the right, an assertion without any support in this area of the law, it is even more unclear what procedures would have to be employed to ensure that an accused has validly waived his right to counsel. It is possible that simply asking the accused whether he would like to employ the services of the attorney and obtaining a negative response would be enough to allow the police to continue questioning the accused. But even this result raises the question of why this waiver would be more effective than the general waiver obtained before questioning began.

Moreover, neither approach provides for a simple determination of what portion of an accused's statement would be deemed admissible and what portion would be deemed to have been obtained in violation of the Sixth Amendment. If it is incumbent upon the accused to invoke the right, then the determination is clear from the record: any statement made in the absence of counsel after an individual has invoked the right to counsel is inadmissible. This same type of clarity is not possible when the individual asserting the right to counsel is not in the same location as the accused.

In addition, neither approach affords the proper respect to an accused's decision to forego the assistance of counsel and submit to questioning that the choice should be given. For whatever reason an accused decides to waive his right to counsel, either good or ill, it is his decision to make, and courts should be extremely cautious before they allow other people's concerns about the best interest of the accused to outweigh his own determination. *See Lucas*, 791 S.W.2d at 49 (concluding that Lucas did not invoke his right to counsel and that "[t]o hold otherwise would be to refuse to grant proper respect to *appellant's own desire* to confess his criminal conduct on his own terms" (emphasis added)).

Although he made no personal invocation of his right to counsel, Arabzadegan insists that his confession was obtained in violation of that right. Further, he contends that if we conclude that his Sixth Amendment rights were not violated, our holding will be contrary to prior precedent and will lead to unfavorable results. Specifically, he argues that it would allow the police to question an accused who has requested that counsel be appointed on his behalf as long as the police question the accused between the time the request is made and the time the attorney actually consults with the

11

accused. This argument ignores the distinction present in his hypothetical that, by requesting that counsel be appointed, the accused personally invoked his right to an attorney and has made this desire known to a governmental body. This fact situation was previously addressed by the Supreme Court in *Michigan v. Jackson*. In *Jackson*, the appellants requested the appointment of counsel, were questioned by police after making the request, and gave inculpatory statements. *See* 475 U.S. at 627. In deciding that the statements were obtained in violation of the appellants' Sixth Amendment rights, the Supreme Court stated:

> Sixth Amendment principles require that we impute the State's knowledge from one state actor to another. For the Sixth Amendment concerns the confrontation between the State and the individual. One set of state actors (the police) may not claim ignorance of *defendants' unequivocal request for counsel* to another state actor (the court).

*Id.* at 634 (emphasis added).

The *Jackson* case is much different than the one here. The appellants in *Jackson* specifically asked for the appointment of counsel, and the Supreme Court rightly concluded that it would be unfair to allow an accused's request for counsel to a governmental official be rendered a nullity by allowing other governmental employees to question the accused. Arabzadegan never asked to speak to an attorney or to have an attorney appointed for him. If he had made either of those requests, knowledge of that request would properly be imputed to all police officers.[6]

---

[6] Relying on *Jackson*, the dissent places a great deal of importance on the idea that knowledge of the two attorneys' statements to the police that they might be representing Arabzadegan should have been imputed to all police officers. However, in making this assertion, the dissent ignores the fact that the imputation of knowledge of an attorney-client relationship has only been allowed in two distinct circumstances, neither of which apply to the circumstances of this case.

To be effective, Arabzadegan's argument also requires that knowledge of a statement made by someone other than the accused be instantaneously imputed to all police officers. His argument would require imputation of the knowledge that an attorney had asked police officers at the front desk of the police station about Arabzadegan to the officer contemporaneously questioning

_____

The first situation occurs when an accused has requested that an attorney be appointed to represent him in a criminal proceeding. *See Michigan v. Jackson,* 475 U.S. 625, 634 (1986); *see also Smith v. State*, 828 S.W.2d 495, 496 (Tex. App.—El Paso 1992, no pet.) (holding that interrogation by police after Smith requested appointment of counsel from county employee responsible for obtaining appointments violated Sixth Amendment and further holding that request to one state employee must be imputed to other state actors); *Alford v. State*, 788 S.W.2d 436, 438-39 (Tex. App.—Houston [1st Dist.] 1990, no pet.) (noting that Alford requested attorney from magistrate and holding that his subsequent interrogation by police violated Sixth Amendment). There are significant policy reasons favoring the rule requiring imputation of an accused's request for counsel. Primarily, the rule ensures that an accused's request for counsel is given the respect that the invocation of a constitutional right of this import should be given. It allows the accused the benefit of only having to assert the right once to have the full protections afforded by the right. Moreover, a contrary rule would allow the police to sidestep an accused's invocation of his right to counsel simply by sending in police officers who had no knowledge of the prior request to obtain a waiver and continue questioning the accused and would, thereby, effectively render an accused's Sixth Amendment right to counsel a nullity. These policy considerations are not present where, as here, an accused never communicated that he wanted the protections of the Sixth Amendment and waived his right to counsel but others attempted to invoke that right on his behalf.

The second circumstance in which knowledge concerning an attorney-client relationship has been imputed to state actors occurs when an accused fails to invoke his right to counsel but the court appoints an attorney to represent the accused because the very nature of the crime charged or the severity of the potential punishment that could be imposed necessitates the benefit of counsel. *See Miranda v. Arizona*, 384 U.S. 436, 471 (1966) (holding that where assistance of counsel is constitutionally required, right to be provided counsel does not depend on request); *Holloway* 780 S.W.2d 787 (explaining that although accused did not invoke his right to counsel, he was appointed counsel to represent him in his capital-murder trial, and his waiver of right to counsel in absence of counsel was, therefore, invalid); Tex. Code Crim. Proc. Ann. art. 26.052 (West Supp. 2006) (requiring appointment of counsel in death-penalty cases). Although I believe that the Sixth Amendment right to counsel is deemed invoked in situations where the law requires the appointment of an attorney regardless of express invocation by the accused, there is no such law applicable to the circumstances present in this case, and I, therefore, cannot ignore the fact that Arabzadegan never invoked his right to counsel and voluntarily chose to submit to police questioning unaided by the advice of counsel.

Arabzadegan. The record indicates that Arabzadegan's inculpatory statements were obtained at nearly the same time that a lawyer came to the police station stating that he was Arabzadegan's attorney. Moreover, the record also reflects that the officers at the front desk made diligent efforts to try and locate Arabzadegan and to provide the lawyer with the contact information of various police officers involved in the case. *Cf. Plattenburg*, 972 S.W.2d at 916 (when determining that no Sixth Amendment violation occurred, court noted that officer who actually took statement from Plattenburg was unaware that lawyer was at police station looking for him). In light of the fact that the record fails to show any dilatory tactics by the police, instantaneously imputing knowledge given to an officer at the front desk to officers questioning an accused and thus rendering the confession obtained from Arabzadegan inadmissible would greatly distort the holding of *Jackson* and its progeny.

In support of his argument, Arabzadegan also relies on *Upton v. State*. He argues that this case supports his position that information indicating the possibility of an attorney-client relationship that is given to the police by sources other than the accused will render any waiver of counsel invalid for Sixth Amendment purposes. In *Upton*, a family member asked an attorney to go to the police station and talk to Upton. 853 S.W.2d at 554 n.3. The attorney met with Upton at the police station for an extended period of time and advised Upton not to talk to anyone. *Id.* The attorney informed the police that he told Upton not to make a statement and that he either was or would be representing Upton. *Id.* at 554, 556. After the attorney left, the police began to question Upton. *Id.* at 554. While being questioned by the police, Upton said that the attorney told him not to talk to the police, and one of the interrogating officers told Upton, "Well he may be your lawyer, he's your employee, you know. It's up to you." *Id.* Subsequently, Upton made self-incriminating

14

statements. *Id.* The court concluded that the incriminating statements were obtained in violation of the Sixth Amendment. *Id.* at 557-58.

The *Upton* case is distinguishable from the present case. In that case, the State "failed to carry its burden." *Id.* at 557. Upton mentioned at the beginning of the interrogation that a lawyer had advised him not to talk to anyone, and the police even described the attorney as Upton's attorney during the interrogation. Yet the police failed to ascertain whether Upton was represented by counsel. Moreover, they attempted to obtain a waiver of the right to counsel even though they believed that Upton was represented. In light of these facts, the police failed to demonstrate that the waiver was valid.

For all the preceding reasons, I would conclude that the protections afforded by the Sixth Amendment are invoked only when the *accused* asserts his right to counsel. Because there is no indication in the record that Arabzadegan ever asked to consult with an attorney, I concur in the judgment of the Court.

_____

David Puryear, Justice

Before Justices Puryear, Waldrop and B. A. Smith*

Filed: July 18, 2007

Publish

*Before Bea Ann Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).