TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00465-CR






Luke Masood Arabzadegan, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT

NO. D-1-DC-02-500454, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING





C O N C U R R I N G O P I N I O N


 I agree that Arabzadegan was not represented by counsel at the time of his confession
and thus, with the exception of footnote 7, I join the majority opinion. I write separately because I
believe that an accused must personally assert his right to counsel to invoke his Sixth Amendment
right. I would hold that an accused has invoked his right to counsel under the Sixth Amendment
only when he personally makes the request or somehow indicates to the police that he is already
represented by counsel. Without such an assertion, I believe that an accused may validly waive his
right to counsel under both the Fifth and Sixth Amendments even if counsel has been retained
to represent him. 

 The Sixth Amendment guarantees the accused the right to "rely on counsel as a
'medium' between him and the State." Maine v. Moulton, 474 U.S.159, 176 (1985). If invoked, the
police must respect the accused's choice to seek counsel and must not act in a manner that dilutes
the protection afforded by the right, and it is a violation of the Sixth Amendment for the police to
knowingly circumvent the accused's right to have counsel present during "a confrontation between
the accused and a state agent." Id. at 171, 176. "If an accused is interrogated after the right to
counsel has attached, and a statement obtained, the police may not use that statement against the
accused unless counsel was present or waived when the statement was obtained." Robinson v. State,
851 S.W.2d 216, 224 (Tex. Crim. App. 1991). 

 If the police interrogate an individual after he asserts his right to counsel and after his
Sixth Amendment right has attached, "any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." Michigan v. Jackson, 475 U.S. 625, 636 (1986). "Just as written
waivers are insufficient to justify police-initiated interrogations after the request for counsel in a
Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after
the request for counsel in a Sixth Amendment analysis." Id. at 635 (emphasis added). 

 In determining whether an accused has waived his Sixth Amendment right, courts
should "indulge every reasonable presumption against waiver." Id. at 633. As a result, the burden
of establishing a valid waiver falls on the State. Id.; Upton v. State, 853 S.W.2d 548, 553
(Tex. Crim. App. 1993) (holding that burden is on State); see also Robinson, 851 S.W.2d at 224
(holding that burden of showing that waiver of counsel was made "voluntarily, knowingly, and
intelligently" falls on State). However, in determining whether the right was validly waived, the key
inquiry is whether the accused was "made sufficiently aware of his right to have counsel present
during the questioning, and of the possible consequences of a decision to forgo the aid of counsel." 
Patterson v. Illinois, 487 U.S. 285, 292-93 (1988). Waiving the right to an attorney after being given
Miranda warnings can constitute an effective waiver of the Sixth Amendment right. See id. at 293,
296, 298. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced,
that he at all times knew he could stand mute and request a lawyer, and that he was aware of the
State's intention to use his statements . . . , the analysis is complete and the waiver is valid as a
matter of law." Id. at 297; see also Robinson, 851 S.W.2d at 224 (holding that waiver is shown as
matter of law if accused "(1) who has not yet retained or been appointed counsel (2) decides
voluntarily not to rely on his right to counsel and (3) that decision is made with the understanding
that he could remain silent and request a lawyer and that the State could use any statement he gave
against him" (citations omitted)). 

 I believe that the Sixth Amendment right to counsel, as expressed by the plain
language of the amendment and by the opinions dealing with it, is a personal right of the accused and
may not be invoked by an attorney or anyone else on behalf of the accused. (1) See U.S. Const. amend.
VI ("accused shall enjoy the right to . . . Assistance of Counsel" (emphasis added)). Further, I
believe that to properly invoke the right, the accused must assert his right to counsel or inform the
police in some manner that he has retained counsel. See Plattenburg v. State, 972 S.W.2d 913, 916
(Tex. App.--Beaumont 1998, pet. ref'd) (holding that confession was not obtained in violation of
Sixth Amendment and noting that Plattenburg did not tell officers that he had or wanted legal
representation); Terrell v. State, 891 S.W.2d 307, 314 (Tex. App.--El Paso 1994, pet. ref'd)
(concluding that there was no Sixth Amendment violation and noting that accused never mentioned
prior relationship with attorney or that he believed that he was represented). 

 Although the burden is on the State to prove a valid waiver of the right, I believe that
the State's burden is only to demonstrate that the waiver was made voluntarily and knowingly, not
to demonstrate that no attorney-client relationship actually existed. If the State demonstrates (1) that
the accused voluntarily waived his right to counsel after being properly informed of his rights and
(2) that, prior to and during the interrogation, an accused did not mention that he wanted to speak
to a lawyer, that he had a lawyer, or that he asked someone to hire him a lawyer, then I believe that
the State has satisfied its burden. Cf. Patterson, 487 U.S. at 297-98 (rejecting argument that it is
more difficult to waive Sixth Amendment right to counsel than to waive Fifth Amendment right). I believe that requiring a personal invocation of the right is consistent with the history
of the right and properly balances the various interests at stake. First, the language in the cases
concerning the right to counsel under both the Fifth and Sixth Amendments demonstrates that the
right to counsel is something that the accused must assert to be effective. A good example of this
is found in Patterson v. Illinois. In Patterson, the Supreme Court concluded that an individual's
waiver of his right to an attorney after being given the Miranda warnings constituted a valid waiver
under the Sixth Amendment. 487 U.S. at 296. In making its decision, the Court noted "as a matter
of some significance that the petitioner had not retained, or accepted by appointment, a lawyer to
represent him at the time he was questioned." Id. at 290 n.3 (emphasis added). Indeed, the Court
stated that the "[p]etitioner . . . at no time sought to exercise his right to have counsel present" and
that had the "petitioner indicated he wanted the assistance of counsel, the authorities' interview
would have stopped, and further questioning would have been forbidden." Id. at 290-91 (emphasis
added). In discussing the applicability of prior Fifth Amendment precedent in the Sixth Amendment
context, the Court stated that the essence of prior cases concerning the right to counsel is
"[p]reserving the integrity of an accused's choice" to interact with police through his attorney or to
"go it alone." Id. at 291 (emphasis added). The Court reasoned that if an accused "knowingly and
intelligently" decides to go it alone, "we see no reason why the uncounseled statements he then
makes must be excluded at his trial." Id. (2) 

 Similar statements were also made by the court of criminal appeals in
Holloway v. State, 780 S.W.2d 787 (Tex. Crim. App. 1989), and Lucas v. State, 791 S.W.2d 35 (Tex.
Crim. App. 1989). When deciding whether an attorney-client relationship existed in Holloway, (3) the
court reasoned that "[i]nvocation of counsel is therefore essential to bar further police contact with
a suspect in the Fifth Amendment context or an accused in the Sixth Amendment context." 
780 S.W.2d at 790 (emphasis added). Further, the court explained that the decisions in Edwards and
Jackson were concerned with providing "an accused or suspect--not the attorney--with the means
by which he may effectuate a decision to not deal with authorities alone." Id. (emphasis added).

 Although Lucas involved the Fifth and not the Sixth Amendment, the court made
similar statements regarding an individual's burden to invoke the right to counsel. In Lucas, the
court had to determine, in part, whether an attorney, who had never met with the accused, could
effectively invoke the accused's Fifth Amendment right to counsel on behalf of the accused and stop
an interrogation. See generally 791 S.W.2d 35. The lawyer faxed a letter to the sheriff's department,
purporting to invoke Lucas's Fifth Amendment right. Id. at 47. The court stated that it would be
counterproductive to "allow counsel to invoke the constitutional protection on behalf of a criminal
defendant who has not yet met with counsel and has not himself expressed a desire to invoke that
protection." Id. (emphasis added). Further, the court stated that "[t]he right to counsel is considered
invoked where a person indicates he or she desires to speak to an attorney or have an attorney
present." Id. at 45 (emphases added); see also Jackson, 475 U.S. at 633, 636 (holding that courts
are required to give "a broad, rather than a narrow, interpretation to a defendant's request for
counsel," and, as in Fifth Amendment context, "the assertion is no less significant, and the need for
additional safeguards no less clear, when the request is made at an arraignment and when the basis
for the claim is the Sixth Amendment"; further holding that if police initiate interrogation after "a
defendant's assertion" of right to counsel, waiver is ineffective (emphases added));
Moran v. Burbine, 475 U.S. 412, 426 (1986) (holding that Miranda gives "the defendant the power
to exert some control over the course of the interrogation"); Moulton, 474 U.S. at 170, 176 (holding
that once "the right to counsel has attached and been asserted, the State must" honor it; also holding
that State has obligation "not to act in a manner that circumvents the protections accorded the
accused by invoking this right" (emphases added)).

 In addition, the analysis in Moran v. Burbine, although limited to the Fifth
Amendment context, strongly indicates that the right to counsel is something that an individual must
assert to be effective and seems to have equal applicability in the Sixth Amendment context. (4) In
Moran, the Supreme Court had to determine whether the failure of law enforcement to inform an
accused that a public defender had called the police station on his behalf violated his Fifth
Amendment right to an attorney. Burbine's sister called the public defender's office to try to obtain
assistance for Burbine, but Burbine did not realize that his sister was trying to get him an attorney. 
475 U.S. at 416-17. The attorney called the police station and informed the police that Burbine was
represented by counsel. See id. at 417. The police interrogated Burbine shortly after the phone call
without the attorney being present. Id. 

 In reaching its conclusion that Burbine validly waived his right to counsel after being
given the Miranda warnings, the Court reasoned as follows:


Events occurring outside of the presence of the suspect and entirely unknown to him
surely can have no bearing on the capacity to comprehend and knowingly relinquish
a constitutional right. . . . No doubt the additional information would have been
useful to respondent; perhaps even it might have affected his decision to confess. 
But we have never read the Constitution to require that the police supply a suspect
with a flow of information to help him calibrate his self-interest in deciding whether
to speak or stand by his rights. Once it is determined that a suspect's decision not to
rely on his rights was uncoerced, that he at all times knew he could stand mute and
request a lawyer, and that he was aware of the State's intention to use his statements
to secure a conviction, the analysis is complete and the waiver is valid as a matter of
law. 

 


Id. at 422-23 (citations omitted). Further, the Court stated that the withholding of information "is
only relevant to the constitutional validity of a waiver if it deprives a defendant of knowledge
essential to his ability to understand the nature of his rights and the consequences of abandoning
them." Id. at 423-24. In addition, the Court concluded that it was unwilling to adopt a rule that
required the police to inform a suspect of the efforts of an attorney to reach him. Id. at 425. Finally,
the Court stated that it was unwilling to expand the requirements listed in Miranda to include a
requirement that the police "keep the suspect abreast of the status of his legal representation." Id. at  (5)

 Additionally, the need for simplicity and a bright-line rule also weighs in favor of
requiring an individual to invoke the right to counsel for himself. In Miranda, the Court stated that
one of the purposes of its holding is "to give concrete constitutional guidelines for law enforcement
agencies and courts to follow." 384 U.S. at 441-42. It is consistently expressed in the case law
interpreting Miranda that, due to its simplicity, the bright-line rule adopted by the Supreme Court
is helpful to both the State and the accused. See, e.g., Arizona v. Roberson, 486 U.S. 675, 680
(1988) (opining that one of principal advantages of Miranda is "the ease and clarity of its
application"); New York v. Quarles, 467 U.S. 649, 657-58 (1984) (noting that to preserve clarity of
its holding, Court has refused to expand Miranda's holding despite repeated requests);
Fare v. Michael C., 442 U.S. 707, 718 (1979) (explaining that holding in Miranda "has the virtue
of informing police and prosecutors with specificity as to what they may do in conducting custodial
interrogation, and of informing courts under what circumstances statements obtained during such
interrogation are not admissible"; specifying that "gain in specificity" outweighs burdens imposed
by Miranda). A bright-line rule in the Sixth Amendment context will aid the police because it
clearly informs them when the Sixth Amendment right to counsel is invoked and therefore when the
interrogation must stop. This provides the assurance that admissions obtained through questioning
will not later be deemed inadmissible despite the fact that the police believed that they had satisfied
all the necessary prerequisites to question an accused. Finally, it would aid courts in determining
whether a confession was obtained in violation of the accused's Sixth Amendment right to counsel.

 A contrary rule provides no guidance as to what actions the police should engage in 
when a lawyer asserts that he is invoking an accused's Sixth Amendment right while the accused is
being questioned, but the accused has made no indication that he had retained or wanted to employ
the services of an attorney. If the lawyer's statements are treated as fully invoking the right, then it
stands to reason that simply obtaining another confirmation from the accused that he did not want
to have the assistance of counsel would be insufficient to constitute a valid waiver. See Holloway,
780 S.W.2d at 795 (holding that if valid attorney-client relationship exists and Sixth Amendment
right has attached, relationship may not be dissolved in absence of counsel); see also Upton,
853 S.W.2d at 553 (holding that where attorney-client relationship exists, accused's unilateral waiver
of right to counsel is invalid for Sixth Amendment purposes). Rather, it would seem that despite the
fact that the accused never asked for a lawyer, the police would have to allow the lawyer or another
lawyer to consult with the accused in order to obtain a valid waiver. Requiring this type of
unsolicited and yet mandatory consultation with an attorney fails to consider the possibility that there
are situations, including domestic disputes and organized criminal activity, in which an accused
might legitimately not want to speak with or employ the services of an attorney hired
by another individual. 

 If the lawyer's statement is treated as something less than a complete invocation of
the right, an assertion without any support in this area of the law, it is even more unclear what
procedures would have to be employed to ensure that an accused has validly waived his right to
counsel. It is possible that simply asking the accused whether he would like to employ the services
of the attorney and obtaining a negative response would be enough to allow the police to continue
questioning the accused. But even this result raises the question of why this waiver would be more
effective than the general waiver obtained before questioning began. 

 Moreover, neither approach provides for a simple determination of what portion of
an accused's statement would be deemed admissible and what portion would be deemed to have
been obtained in violation of the Sixth Amendment. If it is incumbent upon the accused to invoke
the right, then the determination is clear from the record: any statement made in the absence of
counsel after an individual has invoked the right to counsel is inadmissible. This same type of clarity
is not possible when the individual asserting the right to counsel is not in the same
location as the accused. 

 In addition, neither approach affords the proper respect to an accused's decision to
forego the assistance of counsel and submit to questioning that the choice should be given. For
whatever reason an accused decides to waive his right to counsel, either good or ill, it is his decision
to make, and courts should be extremely cautious before they allow other people's concerns about
the best interest of the accused to outweigh his own determination. See Lucas, 791 S.W.2d at 49
(concluding that Lucas did not invoke his right to counsel and that "[t]o hold otherwise would be to
refuse to grant proper respect to appellant's own desire to confess his criminal conduct on his own
terms" (emphasis added)). 

 Although he made no personal invocation of his right to counsel, Arabzadegan insists
that his confession was obtained in violation of that right. Further, he contends that if we conclude
that his Sixth Amendment rights were not violated, our holding will be contrary to prior precedent
and will lead to unfavorable results. Specifically, he argues that it would allow the police to question
an accused who has requested that counsel be appointed on his behalf as long as the police question
the accused between the time the request is made and the time the attorney actually consults with the
accused. This argument ignores the distinction present in his hypothetical that, by requesting that
counsel be appointed, the accused personally invoked his right to an attorney and has made this
desire known to a governmental body. This fact situation was previously addressed by the Supreme
Court in Michigan v. Jackson. In Jackson, the appellants requested the appointment of counsel, were
questioned by police after making the request, and gave inculpatory statements. See 475 U.S. at 627. 
In deciding that the statements were obtained in violation of the appellants' Sixth Amendment rights,
the Supreme Court stated:


Sixth Amendment principles require that we impute the State's knowledge from one
state actor to another. For the Sixth Amendment concerns the confrontation between
the State and the individual. One set of state actors (the police) may not claim
ignorance of defendants' unequivocal request for counsel to another state actor (the
court). 



Id. at 634 (emphasis added). 

 The Jackson case is much different than the one here. The appellants in Jackson
specifically asked for the appointment of counsel, and the Supreme Court rightly concluded that it
would be unfair to allow an accused's request for counsel to a governmental official be rendered a
nullity by allowing other governmental employees to question the accused. Arabzadegan never
asked to speak to an attorney or to have an attorney appointed for him. If he had made either of those
requests, knowledge of that request would properly be imputed to all police officers. (6) 

 To be effective, Arabzadegan's argument also requires that knowledge of a statement
made by someone other than the accused be instantaneously imputed to all police officers. His
argument would require imputation of the knowledge that an attorney had asked police officers at
the front desk of the police station about Arabzadegan to the officer contemporaneously questioning
Arabzadegan. The record indicates that Arabzadegan's inculpatory statements were obtained at
nearly the same time that a lawyer came to the police station stating that he was Arabzadegan's
attorney. Moreover, the record also reflects that the officers at the front desk made diligent efforts
to try and locate Arabzadegan and to provide the lawyer with the contact information of various
police officers involved in the case. Cf. Plattenburg, 972 S.W.2d at 916 (when determining that no
Sixth Amendment violation occurred, court noted that officer who actually took statement from
Plattenburg was unaware that lawyer was at police station looking for him). In light of the fact that
the record fails to show any dilatory tactics by the police, instantaneously imputing knowledge given
to an officer at the front desk to officers questioning an accused and thus rendering the confession
obtained from Arabzadegan inadmissible would greatly distort the holding of
Jackson and its progeny.

 In support of his argument, Arabzadegan also relies on Upton v. State. He argues that
this case supports his position that information indicating the possibility of an attorney-client
relationship that is given to the police by sources other than the accused will render any waiver of
counsel invalid for Sixth Amendment purposes. In Upton, a family member asked an attorney to go
to the police station and talk to Upton. 853 S.W.2d at 554 n.3. The attorney met with Upton at the
police station for an extended period of time and advised Upton not to talk to anyone. Id. The
attorney informed the police that he told Upton not to make a statement and that he either was or
would be representing Upton. Id. at 554, 556. After the attorney left, the police began to question
Upton. Id. at 554. While being questioned by the police, Upton said that the attorney told him not
to talk to the police, and one of the interrogating officers told Upton, "Well he may be your lawyer,
he's your employee, you know. It's up to you." Id. Subsequently, Upton made self-incriminating
statements. Id. The court concluded that the incriminating statements were obtained in violation
of the Sixth Amendment. Id. at 557-58. 

 The Upton case is distinguishable from the present case. In that case, the State "failed
to carry its burden." Id. at 557. Upton mentioned at the beginning of the interrogation that a lawyer
had advised him not to talk to anyone, and the police even described the attorney as Upton's attorney
during the interrogation. Yet the police failed to ascertain whether Upton was represented by
counsel. Moreover, they attempted to obtain a waiver of the right to counsel even though they
believed that Upton was represented. In light of these facts, the police failed to demonstrate that
the waiver was valid.

 For all the preceding reasons, I would conclude that the protections afforded by the
Sixth Amendment are invoked only when the accused asserts his right to counsel. Because there is
no indication in the record that Arabzadegan ever asked to consult with an attorney, I concur in the
judgment of the Court.


 ___________________________________________ David Puryear, Justice

Before Justices Puryear, Waldrop and B. A. Smith*


Filed: July 18, 2007


Publish







*Before Bea Ann Smith, Justice (retired), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 2005).
1. The dissent states that by concluding that the Sixth Amendment must be personally
invoked, I have "effectively equate[d] the Sixth Amendment right with the Fifth Amendment right." 
I disagree. Although I believe both rights must be personally invoked, I also recognize that the rights
apply in different contexts and provide fundamentally different protections and privileges.
2. In a footnote to its opinion in Patterson, the Supreme Court commented on the possibility
that the police might interfere with the attorney-client relationship. Footnote nine reads, in relevant
part, as follows:


[W]e have permitted a Miranda waiver to stand where a suspect was not told that his
lawyer was trying to reach him during questioning; in the Sixth Amendment context,
this waiver would not be valid.


Patterson v. Illinois, 487 U.S. 285, 297 n.9 (1988) (emphasis added). This comment has no bearing
on the facts of this case. First, the statement presupposed that an attorney-client relationship was in
existence when it stated that the accused's attorney was trying to reach him. There is no indication
that Arabzadegan formed an attorney-client relationship with either Turner or Saegert. Second, I do
not read that statement to mean that there is no duty imposed on the accused to indicate to the police,
in some manner, that he would like to be appointed counsel, has retained counsel, or thinks that
counsel may have been retained for him. If the police prevented an accused's attorney from seeing
the accused after he made any of these types of statements, then any waiver of his right to counsel
would indeed be invalid. 
3. After being appointed an attorney, Holloway was questioned by the police. 
Holloway v. State, 780 S.W.2d 787, 789 (Tex. Crim. App. 1989). The court concluded that the right
to counsel had attached, that the attorney-client relationship had been established, and that, therefore,
the unilateral waiver of his right to counsel without his counsel being present was invalid. Id. at 796.
4. Burbine also contended that his Sixth Amendment rights were violated by the trial court's
failure to exclude his inculpatory statements. Moran v. Burbine, 475 U.S. 412, 428 (1986). 
However, the Court concluded that because the interrogation took place before the initiation of
adversary judicial proceedings, his Sixth Amendment right to counsel had not attached and,
therefore, no violation could have occurred. See id. at 425, 430-32. 
5. In Moran, the Court did say that "once the right has attached, it follows that the police may
not interfere with the efforts of the defendant's attorney to act as a "'medium" between [the suspect]
and the State' during the interrogation." Moran, 475 U.S. at 428 (emphasis added and removed)
(quoting Maine v. Moulton, 474 U.S.159, 176 (1985)). However, the Court did not say that the
actions of the attorney in Moran would be enough to establish an attorney-client relationship for
Sixth Amendment purposes, nor did it say that there was no requirement that the accused notify the
police or indicate in some way that he is or may be represented by counsel to properly invoke the
Sixth Amendment right. Further, in describing the importance of the Sixth Amendment, the Court
stated that the "Sixth Amendment's intended function is not to wrap a protective cloak around the
attorney-client relationship for its own sake any more than it is to protect a suspect from the
consequences of his own candor." Id. at 430.
6. Relying on Jackson, the dissent places a great deal of importance on the idea that
knowledge of the two attorneys' statements to the police that they might be representing
Arabzadegan should have been imputed to all police officers. However, in making this assertion,
the dissent ignores the fact that the imputation of knowledge of an attorney-client relationship has
only been allowed in two distinct circumstances, neither of which apply to the circumstances of this
case. 


 The first situation occurs when an accused has requested that an attorney be appointed to
represent him in a criminal proceeding. See Michigan v. Jackson, 475 U.S. 625, 634 (1986); see also
Smith v. State, 828 S.W.2d 495, 496 (Tex. App.--El Paso 1992, no pet.) (holding that interrogation
by police after Smith requested appointment of counsel from county employee responsible for
obtaining appointments violated Sixth Amendment and further holding that request to one state
employee must be imputed to other state actors); Alford v. State, 788 S.W.2d 436, 438-39
(Tex. App.--Houston [1st Dist.] 1990, no pet.) (noting that Alford requested attorney from
magistrate and holding that his subsequent interrogation by police violated Sixth Amendment). 
There are significant policy reasons favoring the rule requiring imputation of an accused's request
for counsel. Primarily, the rule ensures that an accused's request for counsel is given the respect that
the invocation of a constitutional right of this import should be given. It allows the accused the
benefit of only having to assert the right once to have the full protections afforded by the right. 
Moreover, a contrary rule would allow the police to sidestep an accused's invocation of his right to
counsel simply by sending in police officers who had no knowledge of the prior request to obtain
a waiver and continue questioning the accused and would, thereby, effectively render an accused's
Sixth Amendment right to counsel a nullity. These policy considerations are not present where, as
here, an accused never communicated that he wanted the protections of the Sixth Amendment and
waived his right to counsel but others attempted to invoke that right on his behalf.

 

 The second circumstance in which knowledge concerning an attorney-client relationship has
been imputed to state actors occurs when an accused fails to invoke his right to counsel but the court
appoints an attorney to represent the accused because the very nature of the crime charged or the
severity of the potential punishment that could be imposed necessitates the benefit of counsel. See
Miranda v. Arizona, 384 U.S. 436, 471 (1966) (holding that where assistance of counsel is
constitutionally required, right to be provided counsel does not depend on request); Holloway
780 S.W.2d 787 (explaining that although accused did not invoke his right to counsel, he was
appointed counsel to represent him in his capital-murder trial, and his waiver of right to counsel in
absence of counsel was, therefore, invalid); Tex. Code Crim. Proc. Ann. art. 26.052 (West Supp.
2006) (requiring appointment of counsel in death-penalty cases). Although I believe that the Sixth
Amendment right to counsel is deemed invoked in situations where the law requires the appointment
of an attorney regardless of express invocation by the accused, there is no such law applicable to the
circumstances present in this case, and I, therefore, cannot ignore the fact that Arabzadegan never
invoked his right to counsel and voluntarily chose to submit to police questioning unaided by the
advice of counsel.